1840.

New-Orleans
G. L. & B. Co.
v.
Dudley.

# New-Orleans Gas Light and Banking Company *vs.* Dudley and others.

By the act of May, 1839, to regulate the trial by jury and the taking of testimony in the court of chancery, the court is authorized to award an issue in any case, previous to the taking of the testimony, if in the opinion of the chancellor or vice chancellor before whom the suit is pending, the proceedings in such suit will be expedited, or the costs therein diminished, or a jury trial will be most conducive to the ends of justice.

But that act does not deprive the court of the power it formerly possessed, to award an issue at the hearing upon pleadings and proofs, where a material fact is rendered doubtful in consequence of conflicting testimony.

A question of usury arising out of disputed facts, upon the determination of which the right of the complainant to a decree against the defendant solely depends, is a proper case for the granting of an issue before the testimony in the cause is taken; if the costs will not be enhanced, nor the proceedings unreasonably delayed, by the awarding of such issue.

Where two or more defendants set up the same matters of fact as a defence, or put in issue the same allegations in the complainants' bill, if a replication is filed to the answer of all such defendants, the issue should be awarded as to all of them, or as to neither; for the purpose of preventing unnecessary expense.

But where defendants have not a common interest, or the defences set up by them are separate and distinct in character, an issue may be awarded as to one defendant, although it may not be a proper case for an issue as to his co-defendant.

In setting up a defence of usury to a suit in chancery, the defendant must, in his plea or answer, as in a plea of usury in an action at law, set up the corrupt and usurious agreement distinctly, stating in substance the terms of the agreement; and he must prove it as alleged.

A plea or answer which merely contains a general charge that the mortgage, for the foreclosure of which the complainants' bill was filed, is usurious, and was founded upon a corrupt agreement by which the lender of the money was to receive, or in some way obtain, a greater interest than seven per cent, either by a pretended sale of property at more than its value, or in some other way, is bad both in form and substance.

Where two defendants sever in their answers, and each attempts to set up the defence of usury, if one of them applies for an issue which is denied, on the ground that the defence of usury is not properly set up to enable him to avail himself of it in the suit, the other defendant who has set up the defence properly, but who has not given notice of an application for an issue, cannot appeal from the decision denying the application as to both. But in such a case, the defendant who has properly set up the defence may be allowed to make a new application for an issue, in his own name.

This was an appeal from a decision of the vice chancellor of the first circuit, denying an application for an issue. The bill was filed to foreclose a mortgage given by Henry Dudley, deceased, and Helen C. his wife, upon 49 lots of land in the city of New-York, the property of the latter, to J. L. & S. J. Joseph and M. Henriques; to secure the payment of a bond executed by H. Dudley and N. W. Stuyvesant, for $130,000 and interest. The defendant P. G. Stoney was made a party as the holder of a mortgage upon 25 of the lots; which last mentioned mortgage, although given before, was recorded subsequent to the mortgage of the Josephs and Henriques, which had been assigned to the complainants. The answer of the defendant Helen C. Dudley admitted the giving of the mortgage and the assignment thereof, and of the bond of H. Dudley and N. W. Stuyvesant, to the complainants. But she set up, in bar to the suit, that her husband and Stuyvesant being in embarrassed circumstances applied to the Josephs and Henriques, the mortgagees, for a loan money, who agreed to loan $130,000, payable in two years with interest at the rate of seven per cent per annum, to be secured by the said bond and mortgage; that the lenders made it an express condition of the loan, that the borrowers should purchase of them three-eighths of 213 acres of land upon Staten Island for the sum or price of $109,500, although such land was not then worth one half of that sum, and at the time of putting in the answer was not worth more than seven or eight thousand dollars; that all the parties to the agreement for the loan knew that the sum agreed to be paid for the Staten Island lands was exorbitant, unreasonable and unjust, and was far above their actual value; that such lands were purchased at that price only upon the condition that the loan should be made as aforesaid, and with the intention of covering the usurious character of the loan; and that such usurious agreement was carried into effect accordingly, by the execution of the bond and mortgage, and the giving of the notes of the borrowers to the lenders for the price so agreed to be paid by them for the Staten Island lands.

The answer of the defendant Stoney put in issue the right of the complainants to sue as a corporation; the execution of the bond and mortgage; and the assignment thereof to the complainants; and set up his own prior mortgage upon the twenty-five lots, as being entitled to a preference in payment, on the ground that the subsequent mortgagees had notice thereof at the time they took their mortgage. This defendant also set up the defence of usury in the complainants' mortgage, in general terms, without stating the particulars of the usurious agreement; as follows : "This defendant further answering, says, that he does not know and does not admit that H. D. & N. W. S. became and were justly indebted to J. L. J. & S. J. J. & M. H. in the sum of $130,000 ; but has heard and believes the truth to be, that if any such indebtedness appears by papers executed by the parties, that the same are covinous and fraudulent, and intended to cover and conceal a corrupt, illegal and usurious transaction, concocted and devised between the parties to raise money by a fraudulent and usurious bargain; and that the said money, if any was in fact advanced and loaned, was not bona fide loaned and advanced at the lawful interest of the state of New-York, but was only so apparently ; when in truth and in fact, the real, secret and moving cause for the execution of the said pretended bond, or obligation, was a corrupt and usurious agreement, by which the said Josephs and Henriques bargained and agreed to get, receive, secure, or in some way obtain for themselves, a larger and greater interest than seven per cent per annum, either by some pretended sale of property at much more than its actual value, or by some other contrivance, trick or device, by which the pretended lenders expected, designed and intended to secure to themselves some pecuniary advantage over and above the lawful interest upon money loaned ; and that the several transactions were, in fraud of the law, designedly kept apparently distinct and separate, for the express purpose of avoiding the statutes of this state against usury." A replication having been filed to both answers, the de-

fendant Stoney, alone, applied to the vice chancellor for an issue; which application having been denied, Stoney and Mrs. Dudley both appealed from that decision.

*S. A. Foot,* for the appellants.

*E. H. Blatchford & J. P. Hall,* for the respondents.

THE CHANCELLOR. It is contended, on the part of the respondents, that the third section of the act of May 2d, 1839, to regulate the trial by jury and the taking of testimony in chancery, leaves the power of the court to grant issues the same as it was previous to the act of April, 1838, on this subject. And that the words, " according to the practice of the court of chancery previous to the passage of the act thereby repealed," at the end of the first clause of that section, apply to the whole of that clause ; and not merely to the taking of testimony before an examiner or commissioner. Such a construction, however, would render the second section of the act of 1839 a nullity. For by the practice of the court, previous to the act of 1838, the court was not authorized to grant an issue, except in a few specified cases, until after the testimony was taken in the cause. At least, it was not the practice of the court to grant an issue, in ordinary cases, unless there was conflicting evidence, so as to create a doubt in the mind of the chancellor upon some matter of fact. The act of 1838 made it the imperative duty of the court to direct an issue, upon the application of either party, in every case in which an issue of fact suitable for the trial of a jury could be framed. And, in all other cases, the testimony of witnesses who resided within a hundred miles of the place where the court was held, was directed to be taken in open court, at the hearing. The object of the amendatory act of 1839 was to preserve the principle of the act of the previous year, except so far as it rendered the awarding of an issue, or the taking of the testimony *viva voce* at the hearing, compulsory upon the court. But leaving it discretion-

1840.

New-Orleans
G. L & B. Co.
v.
Dudley.

ary in the court, where an issue which was suitable to be tried by a jury could be framed, either to award such issue before the testimony in the cause was taken, or to direct the testimony to be taken in open court at the hearing of the cause, (contrary to what was the usual practice of the court previous to the act of 1838,) or to direct it to be taken before an examiner, or commissioner, according to the practice before that time. The court, therefore, is authorized to grant an issue, previous to the hearing or taking of testimony, in cases proper to be tried by a jury ; if, in the opinion of the chancellor, the proceedings in the suit will be expedited, or the costs diminished, or a jury trial will be most conducive to the ends of justice.

In the present case, the answer of Mrs. Dudley presents a single question of fact, upon the determination of which, one way or the other, the complainants' right, to a satisfaction of their debt out of the mortgaged premises, alone depends. For if the allegations in her answer are true, this was a clear and palpable case of usury. Even if an issue is refused in this stage of the suit, it may still be necessary or proper for the court to award an issue at the hearing, in case there should be such a conflict of testimony, on this point, as to render it doubtful whether the sale of the Staten Island property was or was not a mere device to obtain an advantage beyond seven per cent per annum for the making of the loan. (*Marshall* v. *Thompson,* 2 *Munf. R.* 412. *Bullock* v. *Gordon,* 4 *Idem,* 450. *Douglass* v. *McChesney,* 2 *Rand. Rep.* 109.) The act of May, 1839, does not deprive the court of the common law right to award an issue at the hearing, if it has not previously been directed, where the fact is rendered doubtful by conflicting testimony. If therefore the application to the vice chancellor, for an issue, had been made by Mrs. Dudley, I should think this was a very proper case to have awarded such issue, as to the single point of usury set up as a defence in her answer. And as she has no interest in the other matters, put in issue between the complainants and Stoney, if the defence of usury was not properly set up in the answer of the

1840.

New-Orleans
G. L. & B. Co.
v.
Dudley.

latter so as to entitle him to avail himself of that defence, the issue might have been awarded between Mrs. Dudley and the complainants only ; leaving the matters in issue between the other parties to be proved before the examiner, in the usual way.   Or the proof as to those matters might have been directed to be taken at the hearing, after such issue should have been tried.

Where two or more defendants set up the same matter of fact as a defence, by their answers, or put in issue the same allegations in the complainant's bill, if a replication is filed to the answers of all such defendants, the issue should be awarded as to all or neither ; for the purpose of preventing unnecessary expense.   It is for this reason that the 67th rule of the court requires that all of the defendants who are entitled to take testimony in the cause, and who do not join in the application for an issue, should have notice of such application.   But where the defendants have not a common interest, or the defences set up by them are separate and distinct in their characters, it may frequently be proper to grant an issue as to the defence set up by one defendant, although an issue might not be proper as to the others.   If the defendant Stoney, therefore, was not entitled to an issue, for the reason that the defence of usury was not set up in his answer in such a manner as to authorize him to avail himself of that defence by proof in the cause, Mrs. Dudley cannot appeal from the decision of the vice chancellor denying the issue as to her, upon Stoney's application.   In other words, if the appeal is not well taken as to Stoney, it must of course be dismissed as to Mrs. Dudley ; but without prejudice to her right to make an application to the vice chancellor for an issue, to try the allegation of usury set up in her answer, as to her own rights.

Upon an examination of the answer of the defendant Stoney, I think the defence of usury is not set up with sufficient certainty to entitle him to an issue upon that point, or to authorize him to give evidence of usury at the hearing.   The principles of pleading in this court are substan-

1840.

New-Orleans
G. L. & B. Co.
v.
Dudley.

tially the same as at law, so far as relates to matters of substance. And a defendant who attempts to set up a defence of usury in this court must, in his plea or answer, as in a plea of usury in a suit at law, set up the corrupt agreement distinctly, stating in substance the terms of the usurious agreement ; and he must prove it as alleged. ( *Vrocm* v. *Ditmas,* 4 *Paige's Rep.* 526.) Here the answer of Stoney, instead of setting forth the substance of the usurious agreement, as is correctly done in the answer of Mrs. Dudley, merely contains a general charge that the cause of the execution of the bond and mortgage was a corrupt and usurious agreement, by which the lenders bargained and agreed to receive, secure, or in some way obtain a greater interest than seven per cent, either by a pretended sale of property at more than its value, *or in some other way.* Such a plea of usury would certainly be considered bad, both in form and substance, if pleaded as a defence to a suit upon this bond in a court of law ; and it is equally so when thus defectively set up in an answer in this court. And upon the other matters in issue upon this defendant's answer, I think the vice chancellor was right in not sending the case to be tried by a jury.

The appeal, so far as relates to Mrs. Dudley, must therefore be dismissed ; with liberty to her to apply to the vice chancellor, in her own name, for an issue to try the question of usury set up in her answer. And the order appealed from, as to the defendant Stoney, is affirmed with costs.

Order accordingly.