# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

95    11|
33a  230|
95    11
154   370
155   490
95    11|
56a   70|

ROBERT E. JENKINS, Assignee, etc.

*v.*

ELIAS GREENBAUM *et al.*

*Filed at Ottawa May 18, 1880.*

1. WRIT OF ERROR—*party to, in case of bankruptcy.* After an adjudication in bankruptcy, the assignee of the bankrupt is the proper party to bring a writ of error to reverse a decree against the bankrupt, and he alone can do it, and where the writ has been sued out before by the bankrupt, his assignee, after the adjudication, may be substituted as a party, and prosecute the writ of error in his name.

2. USURY—*sufficiency of answer to admit defence.* Where a bill to foreclose a deed of trust prays that an account may be taken of what is due on the notes secured, even if the answer does not set up the technical defence of usury, by claiming a forfeiture of all the interest, but simply claims that the usurious interest paid in excess of six per cent be applied as a credit on the debt, and that the account be stated on equitable principles, it will be sufficient to enable the defendant to avail of any usurious payments made in excess of six per cent on the notes secured or in the various transactions upon which they were based.

3. SAME—*rule in equity as to payments.* In a court of equity relief will be given against payments of usury, though voluntarily submitted to at the time, on the ground of oppression and injustice, as well as its being against the statute, and will apply all such payments above six per cent in discharge of the principal debt.

4. On bill to foreclose a trust deed praying for an account, all sums of money paid under usurious agreements upon the notes secured, or upon the

accounts and renewals before the notes were given or agreed to be paid, above six per cent, where the defendant submits to pay lawful interest, should be deducted from and operate as a credit on the notes; but usury paid on transactions disconnected with the indebtedness sued on should be rejected, and if at any time a settlement has been made, and new notes given in which there is no usury, or on which none has been paid, the master can not go behind the settlement. But so long as any portion of the debt on which usury has been paid or reserved remains, all usury thus paid above six per cent should be deducted as credits.

5. SAME—*terms of relief against, in equity.* The practice in equity has always allowed the complainant to compel a discovery of the particulars of usurious transactions on the condition, only, that he waives the forfeiture of the statutory penalty and submits to pay the debt with legal interest, and no greater degree of strictness in setting up usury will be required in an answer, but it may be stated generally, and need not be more specific than is required in a bill.

6. SAME—*strictness in pleading.* It is no doubt true that where usury is pleaded at law, or is set up in a plea in equity, there must be strictness in setting out the substance of the defence, but the same strictness is not required in an answer.

7. SAME—*mode of stating account.* Where a creditor asks for and submits to have an account stated in a court of equity, it must be done on equitable principles, and all money paid him under usurious agreements, above the legal rate of interest, will be regarded as payments on the principal, and should be thus allowed in the statement of the account, even without any plea or notice. Where an account is sought and ordered for any purpose, none but legal claims should be allowed; and where the bill of items is presented, each party has the right to contest the existence, the amount and the legality of each item; nor is either party required to lay a foundation for such a contest in his pleadings, especially as it regards each item.

8. CHANCERY PLEADINGS—*of the answer.* Although, in stating a defence in an answer, there must be such a degree of certainty as will inform the complainant of the nature of the defence, yet it is not necessary that there should be the same degree of accuracy as is required in a bill.

9. ANSWER—*to bill praying an account.* Where a bill to foreclose a deed of trust prays for an account to be taken and stated of what is due on the notes secured, the defendant will not be required to set out in his answer with precision each item of his account, with a detail of all the particulars connected therewith. Such particularity is not required in bills to redeem or to have a mortgage satisfied. In such cases the party calling for an account only makes a general statement of his case, leaving the itemized accounts to be presented and stated by the master.

10. FORMER DECISIONS—*as to pleading usury.* If the language used in the case of *Mosier* v. *Norton et al.* 83 Ill. 513, can be held to apply to pleading the defence of usury, it can only refer to pleading usury in its proper sense, and can only be applied to the substance, and not the form of the plea,—such as to time, dates, places, sums, etc.; but the language of that case evidently refers to the proof, and manifestly announces the true rule, that the *quantum* of evidence must be the same in both courts of law and equity. The court, in the case of *Maher* v. *Lanfrom*, 86 Ill. 513, applied too rigid a rule to the sufficiency of that part of an answer setting up usury.

WRIT OF ERROR to the Appellate Court for the First District.

A bill was filed by Samuel J. Walker, on the 28th day of February, 1874, against A. D. Rich, trustee of the National Trust Company, and other persons, to enjoin him from selling certain lands named in the trust deed, made by Walker to Rich, to secure large indebtedness evidenced by promissory notes given by Walker to the Trust company.

The company answered, and filed a cross-bill against Walker and Greenbaum and Foreman, together with other parties. By the cross-bill it was alleged that Greenbaum and Foreman claimed to have a prior lien on the same lands by virtue of a trust deed from Walker to John G. Rogers, but that as they held sufficient collaterals such prior lien ought to be held satisfied, or at least they should be required to exhaust their collaterals before resorting to a sale of the land; and the cross-bill prayed such relief.

Greenbaum and Foreman answered this cross-bill, disclosing the assets held by them, and they filed a cross-bill setting up their lien, under the trust deed to Rogers, and set up and claimed other indebtedness against Walker, and made the Third National Bank a party. They prayed that their collateral securities and the land might be sold and applied in satisfaction of their claim against Walker, and they also prayed "that an account might be taken between them and S. J. Walker."

He answered, and set up that in his dealings with Greenbaum and Foreman he had paid them large sums of usurious

interest, and that on a settlement of accounts between them on equitable principles he would be found to owe them nothing.

Walker, in his answer, gives notice and relies on the defence of usury, and sets out the transactions in which it was contracted for and received. ' He alleges in his answer, that for a number of years he had borrowed large sums of money from Greenbaum and foreman, for which he gave to them his own notes, executed trust deeds, and deposited with them the notes of other persons as security for such loans. The answer denies that he is indebted to them, as would appear if a full, fair and equitable accounting could be had between them, and charges that they have used and appropriated moneys received on collaterals, for which they have never accounted to or paid him nor placed to his credit.

The answer also charges that all or nearly all of the loans of money made by him from them were made under and in pursuance of an unlawful, corrupt and usurious agreement and understanding between them and him, to the effect that he should pay to them for the loan and forbearance of said moneys interest thereon at the rate of one and a half and two per cent per month and upwards, and all extensions and renewals of said loans were made and secured upon agreements for and actual payments of similar rates of unlawful and usurious interest.

The answer further "denies he is indebted to them; that he then and at the time of filing his cross-bill' was entitled to large credits upon the notes held by them for payments made thereon, and on the originals for which they are extensions, and for false claims on notes pretended to be held by them against him, and also for other large sums paid them, over and above the lawful rate of interest, for the forbearance of money loaned to him by them in pursuance of the corrupt, unlawful and usurious agreements and understandings aforesaid between them and him, and which sums so paid should in equity and good conscience be credited to him upon the principal of said loans, as such payments were from time to time

made by him.  That relying upon their good faith and integrity he did not keep any very accurate or proper record or memoranda of his business with them, believing the same could be obtained from them on request.  That the principal part of such memoranda as he did keep was destroyed in the fire of October, 1871; that they knew he was dealing with them in a careless and unbusiness-like way and took advantage of it; that without assistance of the said complainants he can not state the account between them and him; that he has frequently requested a statement and an inspection of their books, etc., with the assistance of a skilled accountant, which they have refused to permit; that therefrom the accounts between them can be fairly and equitably adjusted; that such investigation would show that he was entitled to large offsets; and that he has paid them for the loan and forbearance of divers moneys upon unlawful, corrupt and usurious agreements therefor, the sum of at least $400,000 over and above the lawful rates of interest under the statutes of the State of Illinois, which sum should be credited to him upon the principal of the claims presented against him by them; that they are actually indebted to him, and investigation will so show it, to the amount of $200,000, which is more than the pretended amount claimed by them on the notes set out; that in the course of the dealings aforesaid there never has been any accounting, and he denies that he has ever refused to come to an account; that he had sought for several months to have an account upon an inspection of their books, which they refused, always insisting that he should accept as final and conclusive a fixed result presented by them, showing a large indebtedness from him to them; that he is willing to have an accounting under the order of the court with them, in accordance with the settled principles of equity, and upon surrender of his notes, etc., to pay what upon such accounting shall be found due fairly and equitably from him to them."

He also filed a stipulation that he would only claim the excess of interest over and above six per cent, and on an

accounting he would allow Greenbaum and Foreman the principal debt and six per cent interest.

As prayed for in the bill and asked in the answer, the court referred the case to a master to hear evidence and state an account between the parties.   The parties had a hearing before the master, and on making up his account Walker filed exceptions to his conclusions, and on hearing on the exceptions before him he disallowed them and returned his report to the court, and on a hearing on the exceptions filed before the master they were disallowed and the report affirmed.   The court thereupon rendered a decree for the amount found by the master to be due to Greenbaum and Foreman, and ordered its payment by a specified day, and in default of such payment that the property be sold by the master and the proceeds of the sale be applied to discharge the decree.   The decree does not award an execution for the collection of any balance that might remain after applying the proceeds of the sale.

To reverse this decree a writ of error was sued out from the Appellate Court, and on a hearing in that court the decree of the circuit court was affirmed.   And the record is brought to this court on error, and it is urged that the Appellate Court erred in affirming the decree of the circuit court and in decreeing costs against plaintiff in error.

Mr. W. T. BURGESS, for the plaintiff in error:

An assignee in bankruptcy can maintain a writ of error to review a personal judgment or decree against the bankrupt, obtained before adjudication, having an interest to be relieved from such judgment or decree.   *Knox* v. *Exchange Bank,* 12 Wall. 382.

The authorities, that where a forfeiture is claimed on the ground of usury, the pleadings and the proofs must be certain as to time, amount, rate and person to whom paid, have no application here, as we are not claiming the penalty provided in the statute.   Where, in a court of equity, a defendant

sets up or a complainant avers that in the course of dealings between him and the opposite party, touching the matters involved in the suit, usurious interest has been charged, and paid by him, and is compelled to, or does, invoke the equitable powers of the court for discovery or affirmative relief, touching the usury so charged, and offers to do equity in the matter of the usury, then no *pleading of usury,* in the sense it is used by the counsel, is required as a condition precedent to relief as to what may have been paid in excess of lawful interest; but it will be referred to the master to take and state an account between them, upon equitable principles,—that is, giving credit for actual loans and payments, and allowing lawful interest.

As to what is meant by *"a decree to account,"* when such a decree will be entered, its nature and the proceedings under it, counsel cited, ch. 8 of 1 Story's Eq. Jur. secs. 441 to 529; *Ex parte Bax.* 2 Ves. Sr. 388; *Corporation of Carlisle* v. *Wilson,* 13 Ves. 278; *Lewis* v. *Lutton,* 5 id. 683; *O'Conner* v. *Spaight,* 1 Sch. and Lef. 309; *Hind* v. *Goodrich,* 69 Ill. 455; *Pennell* v. *Lamar Insurance Co.* 73 id. 306.

As long as any part of the debt remains unpaid, the debtor may insist upon a deduction of the usury from the part remaining unpaid. *House* v. *Davis,* 60 Ill. 367; *Hadden* v. *Innis,* 24 id. 381; *Farwell* v. *Meyer,* 35 id. 41; *Saylor* v. *Daniels,* 37 id. 331.

As to the pleading in bill for account, and the strictness required, the counsel cited at great length many authorities, among which are, *Parmelee* v. *Lawrence,* 44 Ill. 405; same case, 48 id. 331; *Valentine* v. *Fish,* 45 id. 462; *Carter* v. *Moses,* 39 id. 539; *Johnson* v. *Thompson,* 28 id. 352; *Fanning* v. *Dunham,* 5 Johns. Chy. 122; *Livingston* v. *Harris,* 3 Paige, 538.

As to the sufficiency of the pleadings to present the question of usury, citing *Ruddell* v. *Ambler,* 18 Ark. 369; *Crutcher* v. *Trabue,* 5 Dana, 80; *Day* v. *Cummings,* 19 Vt. 496; *Martin* v. *Nashville Printing Association,* 2 Cold. 419; *Shankland*

v. *Nelson,* 1 Cooper, 459; *Frierson* v. *Moody,* 3 Humph. 561; *Chester* v. *Apperson,* 4 Heiskell, 639; *Marks* v. *Morris,* 4 Hen. and Mumf. 463; *Taylor* v. *Bell,* 2 Vern. 171; *Scott* v. *Nesbitt,* 2 Cox. 183; 2 Brown C. C. 641; *Thomas* v. *Cooper,* 31 Eng. L. and Eq. R. 526; *Pitt* v. *Cholmondly,* 2 Ves. Sr. 567; *Fitzroy* v. *Guillim,* 1 T. R. 154; *Hindle* v. *O'Brien,* 1 Taunt. 413; *Bosanquett* v. *Dashwood,* Cases Temp. Talbot, 38.

Messrs. ROSENTHAL & PENCE, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

Pending this litigation, and after the decree was rendered in the circuit court, Walker was declared a bankrupt, and Jenkins appointed his assignee. Walker has, therefore, ceased to have any interest in the litigation. It is, however, urged that Jenkins can not be substituted as the plaintiff in error; that he is a stranger to the record, and hence the case can proceed no further, but must abate.

The assignee, by his appointment and qualification, becomes the owner of all the property, rights and credits of the bankrupt, for the benefit of the creditors. But this question is settled by the case of *Knox* v. *Exchange Bank,* 12 Wall. 381. It was there said the bankrupts were discharged from the judgment. "It is quite clear that the assignee in bankruptcy of the plaintiffs in error, is the proper party to bring the writ of error, and he alone can do it." This is conclusive of this question. If Jenkins brought the writ, that was literally in accordance with that case, and if he has been substituted since his appointment, that is within its spirit, and is sufficient.

It is urged that the answer of Walker is too loose and indefinite to admit of a deduction of the interest paid, and contracted to be paid, to Greenbaum and Foreman, over six per cent, from their notes against Walker, which are sought to be foreclosed in this suit. We shall not stop to inquire if this would be true if usury had been set up by a plea either at

law or in equity, as this is neither the one nor the other.   The answer does not claim a forfeiture of the interest, but simply that the excess of interest paid above six per cent be applied as a credit on the debt.   This is not so stated in terms in the answer, but it is asked that the account be stated on equitable principles, and the doctrine is well and long settled that equity only allows the defence of usury to the extent above legal interest.   And Walker filed a stipulation that he claimed a deduction only of the excess above six per cent.   Thus it is seen that he did not attempt to plead usury in any technical sense.

From an early period equity has relieved against usurious contracts by requiring payment of the principal debt and legal interest.   Relief was granted in equity in the case of *Bosanquett* v. *Dashwood,* Cases Time of Talbot, p. 38 (1734). In that case the Cottons had given to Dashwood bonds for money loaned at six per cent.   They being unable to pay, he compelled them to pay ten per cent, and they entered into other agreements for that purpose.   These agreements and payments continued fourteen years.   The obligee died and the obligors became bankrupts, and Bosanquett was appointed assignee, who filed a bill to have the bonds canceled and delivered up, also for an account, and the money paid beyond the principal and legal interest refunded by the executor. The relief was decreed by the Master of the Rolls, and on appeal Lord TALBOT affirmed the decree.   He said, although courts of equity were governed by the same rules in the exposition of statutes, they often vary the remedies and the manner of applying them.

It was also held that, it being the province of the court to relieve against all offences against the law of nature and reason, and even in cases which, strictly speaking, may be called legal, how much more so when the covenant or agreement is against an express law,—against the statute of usury, although the party may have submitted, for a time, to the terms of the agreement by him.   The payment of the money will

not alter the case in a court of equity, for it ought not to have been paid. "It is only the corruption of the person making such bargains that is to be considered;" "it is that only which entitles the party oppressed to relief."

The Lord Chancellor refers to the *case of Sir Thomas Miers,* decided by Lord HARCOURT, as an authority in point. In that case there was inserted a covenant that if the interest should not be punctually paid, it should from the time and from time to time be turned into principal and bear interest. The Lord Chancellor granted relief on the ground that the covenant was *unjust* and oppressive. And in 22 Viner's Abridg. 315, it is held that usury paid on a debt may be applied as a payment. And his lordship asked if there ever was a suit for a redemption where it was not decreed,—that if the party was overpaid he should refund. And this was said in reference to applying usury as payments on the debt. These eminent chancellors seemed to regard usury as unjust as well as illegal.

We fail to appreciate the argument that, with our increased intelligence and higher civilization, our perception of right and morals is necessarily advanced. Who can say that we may not have declined in our moral perceptions rather than advanced. But we fail to see the change in public sentiment claimed, as it has not operated to repeal the usury laws. If there is any it has produced no change of policy. There have always been persons restive under restraints of every kind, and persons who have regarded all laws for the prevention of oppression as wrong. The very forms of pleadings denominate usury as corrupt. Eminent judges have denounced it as unjust, and none, so far as our researches have gone, has ever pronounced usury meritorious or commendable. But be this as it may, the argument is impertinent to the issue, as we are powerless to repeal, modify or mitigate the provisions of the law. The argument might have effect on the law-making power, but can have none on the judicial department. We can only enforce the law as it is enacted.

In Willis on Pleadings in Equity, p. 171, is given the form of a bill, probably a copy of the bill in *Bosanquett* v. *Dashwood, supra*. It is very much more general in stating usury than the answer in this case. By turning to the transcript in the cases of *Farwell* v. *Meyer*, 35 Ill. 40, *Sutphen* v. *Cushman*, id. 187, *Ball* v. *Leonard*, 24 id. 146, *House* v. *Davis*, 60 id. 367, and *Hawhe* v. *Snydaker*, 86 id. 197, it will be found the pleadings setting up the usurious transactions are none of them more specific and a portion of them less so than this answer. The practice in chancery has always allowed the complainant to compel a discovery of the particulars of usurious transactions on the condition only that he waives the forfeiture of the penalty and submits to pay the debt with legal interest. If the rule be as claimed by appellees, why compel a discovery by the defendant of the usurious agreement, its terms and conditions and the amount of usury received, and other particulars? It would certainly be singular to say the person relying on usury must set it up with the utmost precision and prove it as pleaded, and yet he might allege in his bill that he was uninformed on these questions and compel the usurer to disclose all of the facts necessary to sustain the bill. But surely such strictness as contended for has never been enforced. And it is said in Dan. Ch. Pr. vol. 2, p. 243, that in stating a defence in an answer there must be such a degree of certainty as will inform the plaintiff of the nature of the defence, but it is not requisite that there should be the same degree of accuracy as is required in a bill.

On turning to the case of *The New Orleans Gas Light and Banking Co.* v. *Dudley*, 8 Paige, 452, one of the answers was sustained that was no more precise than this. Nor was the defence more specific in the cases of *Smith* v. *Nichols*, 8 Leigh, 330, modifying *Crenshaw* v. *Clark*, 5 Leigh, 69, *Dangal* v. *Simmons*, 23 N. Y. 491, and *Gilhardt* v. *Samells*, 9 Ohio, 461, if even as much so as in this case.

But it is claimed that *Mosier* v. *Norton et al.* 83 Ill. 519,

lays down a rule which condemns this answer. This is certainly a misapprehension. The answer in that case stated that the note was " executed and delivered in pursuance of a fraudulent, corrupt, illegal and usurious agreement." The answer there failed to set out any contract. It does not state with whom the agreement was made; that·the payee received or contracted to receive any usury, or even that there was usury in or connected with the note, or that if such was the case, that the payee knew the fact. The answer was therefore held insufficient in setting out the agreement, as such an answer was in *The Gas Light and Banking Co.* v. *Dudley, supra.* It is true it is there said the rule is the same in chancery as at law. If this can be held to apply to pleading the defence, that can only refer to pleading usury in its proper sense, and could only be applied to the substance and not the form of the plea, such as to time, dates, places, sums, etc. But that language evidently refers to the proof, and manifestly announces the true rule that the *quantum* of evidence must be the same in both forums. And it is no doubt true that where usury is pleaded at law, or is set up in a plea in equity, there must be strictness in setting up the substance of the defence.

It would perhaps be impossible to reconcile all of the decisions of the various courts of the Union on this question. And the same is true of expressions used in some of the cases in reference to pleas of usury in this court.

The case of *Maher* v. *Lanfrom,* 86 Ill. 513, is referred to as controlling this question. Not from anything reported in the case, but it is said the transcript will show that a portion of the answer in that case setting up usury was fully as specific as this answer, but it was held defective, and the defence was not allowed.

If this be true, we, on further investigation and more mature reflection, are clearly of opinion that we applied too rigid a rule to that portion of the answer. It is, however, said that a petition for a rehearing was filed in that case. It

is true, but the ground urged was that we had applied too liberal a rule in holding a portion of the answer sufficient. No objection was urged against the decision holding a portion of the answer insufficient. We are at a loss to comprehend how it can be supposed the fact that a rehearing was denied has the remotest bearing on this question.

It would not, as is supposed, follow the repeal of all usury laws, that even then courts of equity would refuse to afford relief. "No usury laws now exist in England, having been repealed by statute. It has nevertheless been decided that the repeal of these laws did not alter the doctrine by which the court of chancery affords relief against improvident and extravagant bargains." Bispham's Eq. sec. 222, p. 229. The authority referred to in support of this doctrine is the case of *Earl of Argyle* v. *Nains*, L. R. 8 Ch. App. 484, in which relief was afforded against the payment of sixty per cent interest per annum on loans, but the borrower was required to pay the principal with five per cent interest.

We are clearly of opinion that the answer is sufficient to require all interest paid over six per cent to be applied as a credit on the notes, as the contract was usurious, and all interest embraced therein above that rate to be deducted therefrom. The question of the forfeiture of all interest is not presented, but on the contrary the answer offers, as we have seen, to account on equitable terms, and Walker filed a stipulation that six per cent interest might be computed on the debt, but claimed that he should be credited by all over that rate.

Again, Greenbaum and Foreman in their bill call for the taking and stating of an account between the parties. And it is unprecedented to require a defendant, when an account is prayed, to set up with precision each item of his account with a detail of all the particulars connected therewith. All persons in the profession know that such is not the practice in bills for an account. Nor is it believed that a case can be found which holds that the parties are required to state the

items of their account in bills to redeem or to have a mortgage satisfied.

In cases like the present the party calling for an account only makes a general statement of his case, leaving the itemized accounts to be presented to and stated by the master. This is believed to be the practice in all such cases. And why, it may be asked, should this case form an exception to uniform, long and well established practice? Appellees asked for and submitted to have an account stated, and as it was in chancery, it was, of course, to be done on equitable principles. And all money paid by force of usurious agreements above legal interest, by force of the fifth and sixth sections of the interest law, was exacted against and was forbidden by the law, and in equity is regarded as payments on the principal, and could be thus allowed on a statement of an account as called for by appellees, even without a plea or notice. Had they not called for an account it might have been otherwise. So that in every point of view the rules of equity practice require that the defence should be allowed, and the court erred in excluding it.

In all references to the master, accounts should be stated on equitable principles, whatever the purpose of the bill. When a reference is made, it is for the purpose of determining what is due from one party to the other, and in ascertaining that fact none but legal claims should be allowed to either party. When the bills of items are presented by the parties, each has the right to contest the existence, the amount and legality of each item of the account presented against him. Nor is either party required to lay a foundation for such a contest by his pleadings, especially as it regards each item.

In this case we are satisfied, on turning to the evidence in the transcript, that it does show that there were large sums of interest over six per cent paid on arrangements, agreements or understandings of some kind to pay more than ten per cent interest, connected with and embraced in the notes

involved. And not only so, but in the accounts and renewals for a considerable period before the notes were given. And all such usurious interest paid or agreed to be paid, above six per cent, should be deducted from and operate as a credit on these notes.

Of course, usury paid on transactions disconnected with this indebtedness should be rejected. But if these notes are the result of renewals, from time to time, of sums on which usury had been paid, or in which it was included, then such usury above six per cent would be a proper credit. If at any time settlements were had and new notes were given in which there was included no usury, or on which none had been paid, the master could not go behind the settlement. But as long as any portion of the debt on which usury has been paid or reserved remains, all usury above six per cent thus paid on or reserved in it should be deducted as credits. See *Peddicord* v. *Connard*, 85 Ill. 102, and *Mitchell* v. *Lyman*, 77 id. 525, where this question is discussed.

This was not done by the master, and his statement of the account was therefore erroneous and should not have been approved by the circuit court, and it was error in the Appellate Court to affirm the decree of the circuit court.

The decree of the Appellate Court must be reversed, and the cause remanded, that an account may be stated in conformity with this opinion.

*Decree reversed.*