# John H. Kase

### v.

## Ernest H. Bennett et ux.

1. An answer, setting up usury, in a suit on a bond, which fails to allege that the bond was made in pursuance of any contract for the loan of money, with corrupt intent to evade the statutes against usury, is fatally defective, even though, on the face of the bond, more than legal interest is reserved.

2. Where a bond provided for the payment by the obligor of all taxes assessed on the loan secured thereby, it may be shown, to avoid the imputation of usury, that the form of the bond, including such provision, was used by the obligee's attorney without the obligee's knowledge or consent, and that such provision was no part of the original agreement.

3. The act of April 17th, 1876 (*Rev. p. 1174 § 153*), providing that the owners of lands within certain counties and cities may agree not to apply for any deduction, by reason of any mortgage, from the taxable valuation of such lands embraced in the mortgage, and that upon claiming a deduction in violation of the agreement the mortgage shall immediately become due, does not conflict with *Const. art. 4 § 7 ¶ 12*, declaring that property shall be assessed for taxes under general laws and by uniform rules, because *Rev. p. 1163 § 109 et seq.*, providing that debts secured by mortgage shall not be assessed for taxation unless the owner of the land applies for a deduction, is a general law, and said section 153 merely authorized the insertion in a mortgage of a particular kind of contract in certain counties, and as the legal rate of interest is not required to be uniform, does not change the law regulating the assessments for taxation.

4. An answer which, after setting out the conditions of a bond in a suit on a bond and mortgage, alleges that said bond and mortgage are usurious, is not sufficient to sustain the defence of usury, in so far as the provisions of the mortgage differ from those of the bond.

---

On bill to foreclose.    On final hearing on bill, answer, replication and proofs.

*Mr. Frederic Adams,* for the complainant.

*Mr. Robert H. McCarter,* for the defendants.

EMERY, V. C.

The bill in this case is filed to foreclose a mortgage given by
the defendants to the complainant, on lands lying in the town-
ship of East Orange, Essex county, and the defence set up at the
hearing is usury.

It is insisted that the usurious nature of the transaction arises
out of the terms and conditions of the bond and mortgage, and
the provisions therein relating to taxes. The condition of the
bond, after the provision for payment of certain sums of money,
and interest thereon at the rate of six per cent., adds:

"together with all national, state, county and municipal taxes which may be
assessed upon the money now loaned and hereby secured, or upon this obliga-
tion, or the indenture of mortgage given to secure the payment of the same
and bearing even date herewith."

The mortgage is conditioned for the payment of the sums of
money mentioned in the condition of the bond, with lawful
interest at the rate of six per cent., according to the condition of
the bond, " without any deduction or defalcation for taxes, assess-
ments or any other imposition whatever," and contains a cove-
nant by the mortgagor that he " shall not nor will apply for
or claim any deduction by reason of this mortgage from the
taxable value of the lands and tenements."

No evidence other than that of the securities themselves is
adduced or relied on by the defendants as bearing on the ques-
tion of usury, and on the hearing before the late Vice-Chancellor
Van Fleet, the defendants objected to the introduction of evi-
dence offered by the complainant for the purpose of showing
that the clause in the bond relating to taxes was inserted therein
without the complainant's knowledge or direction, and was not
in accordance with the bargain between the parties to the bond
and mortgage, and that the loan was, in fact, effected at legal
interest only. The objection was based upon the contention that
the bond and mortgage themselves were the only and conclusive
evidence of the terms of the loan on this hearing, and the evi-
dence was admitted subject to the objection. The evidence of
both the complainant and the defendant, taken under this objec-

tion, shows that, previous to the execution of the papers, the bargain between them was for a loan of $9,000, at the legal rate of interest, and that there was no reference to the taxes in the bargain for the loan. The defendant says that the exact words used by the complainant were: "You may consider the money yours at the present time, as soon as you like, at regular interest."

It further appeared that, on concluding the bargain for the loan, the complainant directed his attorney, Mr. Adams, to make out the bond and mortgage; that he gave no direction to insert this provision as to taxes in the bond, and that his attention was not called to the fact that there was such provision until a year and a half after the execution of the bond and mortgage. Mr. Adams states that the bond and mortgage were drawn pursuant to his directions, as Mr. Kase's attorney, and that the provision as to taxes in the bond was dictated by him from a printed form of mortgage bond, which has been in very common, though not universal, use in the county of Essex since he came to the bar, and that the mortgage was on the usual blank. Upon this evidence as to the actual bargain between the parties and their intent in making the loan, the complainant, at the hearing, which was continued before me, applied to amend the bill by adding the allegation that this clause relating to the payment of taxes was inserted in the bond by the scrivener without complainant's knowledge or direction, and was not in accordance with the bargain between the parties, and that the loan was, in fact, effected at legal interest only, and also applied to add a prayer for reformation of the bond by striking out this clause. The application to amend was opposed by the defendant and affidavits were filed on their behalf, in opposition to the motion. Decision upon the application to amend was reserved and argument was heard upon the whole case, including the application to amend.

The preliminary question to be decided is one of pleading, and is whether usury is sufficiently set up in the answer to sustain the defence. It is settled, under our practice, that where an answer attempting to set up usury is radically defective, that

defence cannot be presented to the court under it at final hearing. *Crane* v. *Homœopathic Insurance Co.*, *12 C. E. Gr. 484 and cases cited (Errors and Appeals, 1875).* The defect in this case was a failure to set out the particulars of the alleged usurious, contract, but the principle of the case reaches to any other substantial defect.

The state of the pleadings in the cause in reference to the question now at issue is as follows :

The bill alleges the indebtedness of the defendant Ernest H. Bennett to the complainant, in the sum of $9,000 (not stating, however, the origin or source of this indebtedness—whether a loan or pre-existing debt), and that, being so indebted, Ernest H. Bennett made, executed and delivered his bond in the penal sum of $18,000 with the condition above set out, and the bill sets out in full the clause of the bond relating to taxes. It then alleges that the mortgage in question was given by Bennett and wife to secure this bond, with the proviso or condition above set out, which is also recited in full. No allegation is made of any default by defendants in the agreement in the bond and mortgage in reference to taxes, nor is any relief prayed as based thereon. The answer of the defendants admits the execution of, the bond for the sum and the condition set out in the bill, and also the execution of the mortgage upon the conditions stated in the bill. It then proceeds as follows:

"And these defendants further answering say, that by the terms and conditions of the said bond for which said mortgage, here sought to be foreclosed, was given to secure as hereinabove set out, it is provided, and the said complainant did require this defendant, Ernest H. Bennett, to obligate and bind himself that he 'shall and will truly pay $9,000 lawful money aforesaid, to wit, $500 in one year from date, $500 in two years from date, $500 in three years from date, $500 in four years from date, $7,000 in five years from date, with interest at six per cent., payable semi-annually on the principal sum remaining unpaid, together with all national, state, county and municipal taxes which may be assessed upon the money now loaned and hereby secured to be paid ; provided, if the said Bennett shall omit to pay any installment of either principal or interest at the time herein specified for the payment thereof, and said installment shall remain unpaid thirty days, and if said Bennett shall omit to pay the annual tax due in any year, and the same shall remain unpaid and in arrear for the space of three months after it shall be legally payable, then the

Kase v. Bennett.

principal and interest remaining due at the option of the said John Kase, shall become and be immediately due and payable, anything to the contrary notwithstanding.'

"And these defendants are advised and allege that the said complainant in and by the said bond and obligation of this defendant, Ernest H. Bennett, did charge and exact and require this defendant, Ernest H. Bennett, to agree to pay upon the loan or forbearance of one hundred dollars, a higher rate than the value of six dollars, and these defendants insist and claim that the said bond and mortgage given to secure the same are usurious, and that in them a higher rate of interest is reserved than was or is allowed by the laws of the State of New Jersey, wherein the said contract was made and executed, and that the said complainant is not entitled to recover any interest upon said mortgage, and that no interest thereon can therefore be said to have become forfeited or due and unpaid, and that the said complainant has no right therefore to anticipate the payment of the principal sum so borrowed and agreed to be repaid on said bond and mortgage prior to the time when the same became and is due and payable, and these defendants deny that any part of said sum of $7,000 is now due or payable upon said bond until five years from the date of said mortgage, and being the second day of February, eighteen hundred and ninety-two."

It will be observed that the answer fails to set up either that the bond was made upon a contract for the loan of money, or that the contract for the loan of money was made between the parties with the intent to violate or evade the statute against usury, or that the bond and mortgage in question was given in pursuance of this corrupt intention. At common law, in a plea of usury to a debt on a bond, all three of these elements are considered essential. *1 Wm. Saund.* (*5th ed.*) *295 note 1, 295 b; 3 Chit. Pl. 966*, and cases cited in notes; and in addition, the particulars of the usurious contract must be set out. A specialty cannot be avoided by usury appearing merely on the face of the condition, but the fact must be pleaded specially and the defendant cannot demur. *1 Chit. Pl. 484.*

As to the defence of usury, the answer in equity must, in substantial matters, be as certain and definite as the plea at law (*Taylor* v. *Morris, 7 C. E. Gr. 606, 611 &c.* (*Errors and Appeals, 1872*); *New Jersey Patent Tanning Co.* v. *Turner, 1 McCart. 326, 329; New Orleans Gas &c. Co.* v. *Dudley, 8 Paige 452, 458*), and in equity the rule of pleading as to this defence, may be somewhat stricter than at law, for while at law a general plea of usury without particulars may be bad only on

Kase v. Bennett.

special demurrer, and may be cured by the plaintiff pleading over, our rule in equity is settled that the failure to particularize in the answer will be fatal, even on final hearing. *Crane* v. *Insurance Co., supra.*

The answer in this case, which merely sets out the condition of the bond and alleges that it is usurious, seems to be based upon the theory that if, on the face of the bond, the interest reserved is greater than the legal rate, the bond is *ipso facto* usurious, and a plea or answer need only set up that it is usurious on its face, without further allegations showing that the contract comes within the reach of the statute.

But this is not the rule of pleading either at law or in equity. If it were, then a demurrer to the declaration or bill would be well taken, if any bond, on the face of it, reserved more than legal interest. But the law is settled that as to usury, the terms of the security are not conclusive as to the terms of the loan, and that the lender may show that although usurious upon its face, there was no usurious intent, and the contract of loan was not in fact usurious. The bond itself on this issue is only *prima facie* evidence of the corrupt agreement which is the foundation of usury. *Archibald* v. *Thomas, 3 Cow. 284; Griffin* v. *New Jersey Oil Co., 3 Stock. 49; Varick's Executors* v. *Crane, 3 Gr. Ch. 128, 134.*

And unless it appear on the face of the bond that it was given to secure a loan or forbearance of money, it would not, as it seems to me, be even *prima facie* evidence of usury, for, as a bond for the payment of money is valid without consideration if so intended by the parties (*Aller* v. *Aller, 11 Vr. 446*), it is manifest, I think, that an agreement thereon to pay more than legal interest on any sum of money is not even *prima facie* evidence of illegality, unless the bond itself also shows that the agreement for interest was made upon a contract for the loan or forbearance of money.

The replication to a plea of usury at law is sufficient if it simply deny the corrupt intent (*Bly. Us. 112; 3 Chit. Pl. 1172; Waterman* v. *Haskin, 7 Johns. *283*), showing that the material issue on the plea of usury must be the corrupt intent of the

parties. This corrupt intent being, then, the real question at issue, if a plea or answer setting up usury is to be good at all, it certainly must allege this corrupt intention as a fact upon which evidence may be taken. The defendants in this case object to any evidence upon the question of intent in making the bond, and it is obvious, I think, that if this evidence as to intention is not admissible under the pleadings, it must be because usury is not properly pleaded. If it were properly pleaded, evidence as to the intention would be admissible under the replication to the answer without any amendment of the bill.

In my opinion the defence of usury in this case cannot be heard upon the answer filed, for the reason that the answer upon this point is radically defective in not setting out that the bond and mortgage in question were made in pursuance of any contract for the loan of money with the corrupt intent to evade the statute against usury.

In the second place, I am of opinion that, taking the answer to be sufficient, the proofs show that the contract of loan was, in its inception, a legal contract between the parties, and that it was no part of the contract for the loan of the money that the defendant should pay the taxes or that the bond should so provide. Taking the answers to be sufficient, the evidence in relation to the intention of the parties is admissible without any amendment of the bill. The use by complainant's attorney, without complainant's direction or knowledge, of a form of bond which included such provision, could not, in my judgment, invalidate or defeat the original lawful agreement for the loan, which both the parties intended to have executed. In this respect, I think the case is similar to those where by mistake of the scrivener, or other mistake, a security apparently unlawful has been taken on a lawful contract of loan. *Griffin* v. *New Jersey Oil Co., supra; Gillette* v. *Ballard, 12 C. E. Gr. 489 (Errors and Appeals, 1875);* *Archibald* v. *Thomas, 3 Cow. 284, 289.*

The form of bond taken in this case probably originated under the act of March 15th, 1866, a supplement to the charter of Newark (*P. L. of 1866 p. 451*), and it has been in common use in Essex county since shortly after that time. At the time of

passage of this law, the general tax laws in force provided that
the debt secured by the bond should be assessed directly upon
the lender.   With the changes in the method of taxation made
by the general law of 1876 (*Rev. p. 1163*), providing that no
mortgage, or debt secured thereby, should be assessed for taxa-
tion unless a deduction was claimed, and in view of the supple-
ment to the Mortgage act (*Rev. p. 1174*), allowing mortgagors
of lands in Essex and certain other counties to agree not to apply
for deduction, the old form of bond, as to taxes, has become
inapplicable to the tax laws as they now exist, and the retention
of the form in common use is probably based upon the idea that,
having no practical application to existing laws, the retention of
it cannot invalidate the bond.   Whether the bond providing for
the payment of taxes would be invalid if an agreement to pay
taxes was one of the terms upon which the loan was actually
made and the bond was made in pursuance of such agreement, I
do not decide, but I do hold that where it is expressly proved
that this agreement as to taxes was no part of the contract of
loan, and that it was inserted without the knowledge of the
lender, the defence of usury based merely upon the insertion of
the clause in the bond is not maintained.

So far as the mortgage is concerned, it will be noticed that in
the answer the special terms or conditions of the mortgage, to
which objection is made or attention is called, are not at all set
out, but the answer, after setting out the terms of the bond, and
that, by the bond, the complainant charged and exacted from
defendant unlawful interest, then says :

"and these defendants insist that the said bond and mortgage given to secure
the same are usurious, and that on them a higher rate of interest is reserved
than was allowed by the law."

So far as the terms of the mortgage differ from those of the
bond, this bare allegation that the mortgage is usurious, without
further specification, is not sufficient to sustain the defence of
usury as to the mortgage in so far as relates to any provisions
in the mortgage which differ from those of the bond.   *Taylor
v  Morris, 7 C. E. Gr. 606, 612* (*Errors and Appeals, 1872*).

The special objection to the provisions of the mortgage is that the clause in the mortgage agreeing not to apply for deduction of the debt from the taxable value of the lands renders the mortgage usurious, although it does not, like the bond, contain an express agreement for the payment of the taxes assessed upon the bond or debt.  It is admitted that this agreement is made under the express authority of the supplement to the act concerning mortgages, approved April 17th, 1876.  *Rev. p. 1174.* But it is contended that this act is unconstitutional, and therefore does not relieve the mortgage from the taint of usury which inheres in it by virtue of the agreement.  The constitutional defect charged is that this act of 1876 applies only to five counties of the state (including Essex), and that, in effect, it establishes as to these counties a special method of taxation, and is therefore invalid as conflicting with the constitutional provision (article 4, section 7, paragraph 12) that " property shall be assessed for taxes under general laws and by uniform rules."

The evidence which was taken in relation to the insertion in the bond of the clause relating to taxes, by mistake, does not apply to this clause of the mortgage, and the case, upon this point, was argued by both counsel upon the validity of the clause as it stood and upon the basis that it was, by the agreement of the parties, to be inserted in the mortgage.  For the reasons above stated, I do not consider the defence of usury in the mortgage sufficiently pleaded, but should I be in error on this point, I reach the conclusion, also, that the objections to the validity of the law which is attacked are not well founded and that the mortgage is not usurious by reason of the agreement included in it under the authority of this law.  My reasons, briefly stated, are :

*First.* That so far as relates to the assessment for taxation of debts secured by mortgages on lands, the act of April 17th, 1876 (*Rev. p. 1163*), a supplement to the Tax act, provides a general law for such method of assessments applicable to all debts secured by mortgage on any land situated anywhere within the state.

This general law relating to the assessment of debts secured

by mortgage provides that the debt so secured shall not be assessed for taxation except upon the condition that the owner of land applies for the deduction. It is within the legislative authority to make the assessment of such debts depend upon such condition, and the condition being universally applicable, the assessment of this class of property is made under a general law and by a uniform rule, within the meaning of the constitution. In *Newark* v. *Merchants' Insurance Co., 25 Vr. 138, 143,* the constitutionality of this law of 1876 was affirmed, and, on writ of error, the law was construed and applied as constitutional. *Newark* v. *Merchants' Insurance Co., 26 Vr. 143.*

*Second.* The supplement to the "Act concerning mortgages," approved April 17th, 1876 (*Rev. p. 1174*), providing that the owners of lands within certain counties and cities might agree not to apply for any deduction, by reason of any mortgage, from the taxable valuation of such lands embraced in the mortgage, and that upon claiming a deduction in violation of such agreement, the mortgage should become immediately due and payable, together with the tax paid by the mortgagee, did not in any respect change the law regulating the assessment for taxation. Its effect was to authorize, in the counties and cities named, a particular kind of contract to be inserted by owners of lands therein, in their mortgages on such lands given to secure debts for which a deduction might be claimed by the debtor, and to provide that the violation of such contract should be attended with certain consequences upon the contract itself. If the result and practical effect of such special authority as to mortgages, within these cities and counties, might be that, in them, the rate of interest is different from that which applies to other parts of the state, this does not invalidate the law, for, as to the rate of interest, there is no constitutional provision which requires that it shall be uniform throughout the state. Laws providing for special rates of interest for different counties (*e. g.,* act of March 10th, 1875, *Rev. p. 520,* as to Monmouth), and as to certain classes of corporations (railroads &c., *Rev. p. 931* § 20), are undoubtedly within the legislative power. Nor does the fact that the tax on the mortgage debt, if deducted by the owner of

the lands and paid by the mortgagee, is to be added to the amount
of the mortgage debt and recovered on foreclosure, bring the
mortgage law within the reason of the constitutional inhibition
now invoked.  The main object of this provision was the public
one of securing uniformity and generality of rules on assessments
for taxation of all property which was selected for taxation.

It did not interfere with a proper legislative control of the
designation of the person who should ultimately pay the assess-
ment for taxation so made, and where, as in the law now in
question, the only objection to the legislative control author-
ized is that it has resulted in producing a contract which violates
the laws against usury, I think it is apparent that the validity
of the law must ultimately depend upon the power of the legis-
lature over the question of usury and the rate of interest.  And,
as this is not restricted by the constitution, my opinion is that
the law is valid.

The evidence shows, and it is not disputed, that the mortgagor
has defaulted in the payments of interest as specified in the bond,
and that by reason of the default, the complainant has exercised
the option reserved in the bond of requiring the whole principal
to be immediately due and payable.  There will therefore be a
decree for the complainant for the whole amount of the principal
money, with interest and costs, and upon the bill as it stands,
without amendment.

The application to amend is denied, without costs.