ROBERT E. JENKINS, Assignee, etc.

v.

AUGUSTUS BAUER ET AL.

1.  VALIDITY OF BANK CHARTER.—The question of the validity of the charter of the International Bank of Chicago has been decided in favor of the bank in the case of The People v. Loewenthal, 93 Ill. 191.

2.  EXCEPTIONS TO MASTER'S REPORT.—Where the order of reference expressly directed the master not to consider the subject of usury, it would have been nugatory to offer evidence before him upon that question, or to interpose exceptions on the ground of his refusal to disobey the express mandate of the court, and a party is not therefore precluded from raising such objection in this court.  This rule is not changed by the fact that the trial court in its decree may have found as a fact that there was no usury, for in such a case the appellate court would examine the proofs as to such finding.

3.  USURY.—In this case the court is of opinion that as to some of the transactions the evidence shows the payment of usurious interest.

4.  USURY AS AGAINST ASSIGNEES OF MORTGAGES.—Mortgages and deeds of trust are non-negotiable choses in action, and when assigned the assignee takes them subject to the same infirmities or defenses to which they are subject as between the original parties.

5.  NOTES AND SECURITIES AS COLLATERALS.—When the particular debt for which the notes were pledged as collaterals in this case was paid, the pledgor was entitled to have a return of the collaterals, and a party receiving them as collateral security for another debt due by the pledgor, they being at the time overdue, took them subject to all such defenses as might be made by the indorser.

6.  RECEIVING OVERDUE NOTE.—A party taking a note that is overdue is put upon inquiry and is chargeable with all such facts that such inquiry would develop.

ERROR to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

The original bill in this case was filed by Augustus Bauer for the foreclosure of certain deeds of trust, and the distribution of the proceeds of the sale of the premises thereby conveyed among the various parties entitled thereto, according

to their respective interests.    It appears that on the 29th day of December, 1871, Samuel J. Walker executed his three promissory notes of that date, for $50,000 each, payable to his own order eighteen months after date, with interest at eight per cent. per annum; and that to secure said notes, said Walker and wife, on the same day, executed to John G. Rogers, as trustee, a deed of trust conveying lots 21 to 36 in block 10, and lots 19 to 28 in block 13, in S. J. Walker's dock addition to Chicago, said deed of trust containing the usual power of sale in case of default in the payment of said notes.    On the 30th day of December, 1871, said Walker, to secure certain indebtedness to the International Mutual Trust Company, a corporation existing under the laws of this State, and afterwards known as the International Bank, executed his six promissory notes bearing date that day, amounting in the aggregate to the sum of $55,498, payable to the order of said bank, one of said notes maturing thirty days, two sixty days, one ninety days, and two three months after date, without grace, each of said notes providing, that in case of non-payment within ten days after maturity, interest should thenceforth be charged and paid at the rate of twenty per cent. per annum, such rate being agreed upon as the measure of liquidated damages for non-payment at maturity.    Said Walker thereupon indorsed the three $50,000 notes secured by the deed of trust, and delivered the same to the bank as collateral security for said six notes, and in each of the six notes the fact that such deposit had been made was recited.

On the 24th day of June, 1872, Walker, by arrangement with the bank, conveyed said lots 19 to 28, in block 13, to Berthold Loewenthal, and the bank surrendered to Walker one of the $50,000 notes, and in lieu thereof Walker executed another note for the same amount, dated June 24, 1872, payable to his own order eighteen months after date, with eight per cent. interest, and secured the same by a deed of trust to Rogers as trustee, on lots 11 to 18, block 12, in said addition. This note was indorsed by Walker to the bank and substituted for the one surrendered.

On the 14th day of September, 1872, the bank, for a valuable

consideration, sold and delivered to Bauer, the complainant, one of said six promissory notes, said note being for $10,000, and due ninety days after date. Of the remaining five notes, one was transferred by the bank to said Loewenthal, two to C. Edward Schoelkopf, and two were retained by the bank.

It also appears that Walter executed to the bank the four following promissory notes, viz.: One for $7,500, dated November 7, 1870, due ninety days after date; two for $5,000 each, dated November 22, 1872, due February 17, 1873; and one for $4,000, dated January 18, 1873, due three months after date. These notes were all drawn with ten per cent. interest after maturity, and each contained an agreement that in case of non-payment within a specified number of days after maturity, a certain larger rate should thenceforth be charged and paid as liquidated damages. In part of the notes this rate was twenty, and in part twenty-four per cent. per annum.

These notes were secured by a deposit of collaterals, as follows: the $7,500 note by a note for $10,000, dated November 2, 1870, due one year after date, executed by Walker and his brother, Henry H. Walker, payable to the order of said Samuel J. Walker, and by him indorsed to the bank, and a deed of trust securing the same executed by Samuel J. Walker and wife, and Henry H. Walker to Samuel M. Moore, as trustee, conveying block 27 in Samuel J. Walker's subdivision of that part of the northwest quarter of Section 31, etc., lying south of the Illinois and Michigan Canal; the two $5,000 notes by the note of Henry H. Walker for $15,000, payable to his own order, dated June 22, 1870, due one year after date, and indorsed by said Henry H. Walker, said note being secured by a deed of trust executed by Samuel J. Walker and wife, to Francis A. Hoffman, as trustee, conveying block 28, in the last mentioned subdivision; and the $4,000 note by a note for $7,500, executed by Samuel J. Walker, payable to his own order, bearing date January 2, 1873, said note being one of a series of thirteen notes, all of like amount, tenor and effect, secured by a deed of trust to Julius Rosenthal, as trustee, conveying certain lands in Cook County therein described by metes and bounds, said thirteen notes being all indorsed by said

Walker to the bank, and number 3 of said series being specifically pledged as collaterial security for the payment of said $4,000 note.

Of the four notes above mentioned, the one for $7,500, the one for $4,000, and one of the notes for $5,000, were, prior to their maturity, negotiated by the bank to Bauer, the complainant, who is still the holder thereof.

The other note for $5,000 was, before its maturity, negotiated by the bank to Henry A. Kohn, Joseph A. Kohn, David A. Kohn and Julius A. Kohn, co-partners, doing business under the name of H. A. Kohn & Bros., and said note is still held by them.

It appears that said Samuel J. Walker commenced dealing with the bank as early as sometime in the year 1869. At that time he was 'extensively engaged in buying and selling real estate, in Chicago and its vicinity, and in the course of that business had occasion to use large sums of money, often amounting to several hundred thousand dollars per week. To obtain this money as he needed it, Walker arranged with the bank for a line of accommodations in the way of loans, usually giving the bank his note for each loan, secured by the deposit of various collaterals, and the money thus borrowed, together with such other moneys as he from time to time deposited, were credited to him on his current bank account, against which he drew checks for money as he needed it in his business.     Part of the notes thus given by Walker to the bank for loans were held by the bank, and part were negotiated to other parties.

On the 7th day of July, 1869, and shortly after the commencement of his dealings with the bank, Walker executed to the bank an instrument in writing, in which, after reciting that he had before that time and intended thereafter, to borrow money from said bank on his own notes, or the notes of H. H. Walker; and had before that time, and intended thereafter, to deposit collateral securities to secure the payment of specific notes, it was agreed that, for the purpose of more fully securing said bank, all and singular the collaterals by him given, or to be given as aforesaid, should, at the option of said bank,

apply generally to all notes held at any time by said bank, executed by him or said H. H. Walker, and should also apply and be considered collaterals to secure the payment of any and all notes negotiated for his account by said bank.

Also, at the time of the execution of the three notes for $50,000 above mentioned, said Walker executed to the bank a further instrument in writing, in which, after reciting the execution of said notes and the deed of trust securing the same, and the pledge of said notes to the bank to secure the six notes above described, and also, that said bank, and other parties through its agency, held the paper of said Walker, with other securities for sundry amounts, it was agreed that said three $50,000 notes should be held by the bank as general collaterals to secure said paper, after said six notes should be paid.

And again, on the 9th day of July, 1873, said Walker executed to said bank a still further instrument in writing, in which, after again reciting that he had theretofore and intended thereafter to borrow money from said bank, either on his own notes, book account, checks, or other evidences of indebtedness, or the notes of Henry H. Walker, and had theretofore and intended thereafter to deposit collaterals to secure the payment of specific notes, checks or other indebtedness, it was agreed as follows:

" Now, therefore, for the purpose of more fully securing the said International Bank, or any person holding my notes purchased of said bank, I do hereby agree that all and singular the collaterals by me given or to be given, as aforesaid, shall, at the option of said International Bank, apply generally to all notes held at any time by said bank executed by me or said Henry H. Walker, and shall also apply and be considered collaterals to secure the payment of my or all of my notes negotiated by said bank, book account, checks, or any other evidence of indebtedness to said bank."

The bill alleges that the full amount of the principal of the several notes transferred, as aforesaid, by the bank to Bauer, the complainant, and interest thereon from certain dates, up to which the payment of the interest by Walker is admitted, is

Jenkins v. Bauer.

due and unpaid.  Also, that by virtue of the several agreements between Walker and the bank above set forth, the complainant, in case the securities specifically pledged for the payment of the indebtedness to him should prove insufficient, is entitled to any surplus arising out of any other securities pledged by Walker to the bank, after the payment of the indebtedness for which the same were specifically pledged.  It is further alleged that several persons who are made parties defendant to the bill, claim to hold some of the notes of Walker, negotiated to them by the bank, and that under said agreements they claim some interest in the several collateral securities above mentioned.

Walker, in his answer, admits his execution to the bank of various promissory notes and other securities, and that some of said notes and securities have been assigned by the bank to other parties, but alleges that the persons to whom the assignments were made were officers, agents or stockholders of the bank, who hold said securities for the benefit of the bank, and that the assignments were merely colorable and intended to cover up and protect the usurious and unlawful transactions of the bank; that the notes held by the complainant are a part of the usurious dealings between the defendant and the bank, and were transferred to the complainant after maturity, or if before, that the complainant had notice at the time he received them of the usurious transactions and agreements, in pursuance of which said notes were given.

The answer further alleges that Walker's transactions with the bank amounted in the aggregate to many millions of dollars; that Walker, relying upon the integrity and good faith of the bank and its officers, failed to keep any sufficient account or memorandum of said transactions; that the bank furnished him with no pass-book for entering deposits, etc., and failed to return him the checks drawn by him, so that he has never had any connected account of said deposits and checks; that he has been improperly charged by the bank without his knowledge or consent, with divers sums of money, amounting in the aggregate to many thousand dollars; that he has applied to the bank for a transcript of his account, which has

been refused, the bank sometimes pretending that its books of account had been destroyed, and at other times that the account was so confused and unintelligible that the true balance could not be ascertained therefrom within $200,000.

Walker further alleges that all the loans of money made to him by the bank were made in pursuance of certain unlawful, corrupt and usurious agreements between him and the bank, to the effect that he should pay the bank interest upon the money so loaned to him, at and after the rate of one and one-half and two per cent. per month and upwards, and that the extension of said loans from time to time, and the notes given by him for extensions and renewals thereof, were so given upon the express understanding and agreement that he should pay the bank interest for the forebearance of said loans, at and after the said rate of one and a half and two per cent. per month and upwards; and that in pursuance of said unlawful, corrupt and usurious agreements, he had actually paid the bank the full sum of $400,000 for interest on moneys borrowed by him therefrom, over and above and in addition to the lawful rate of interest upon the said moneys; but that for the reasons above stated, he is unable to give the items and details of the usurious interest so paid by him; that if the moneys so paid for usurious interest were properly credited on his accounts with the bank, the pretended claims of the bank would be fully paid satisfied and discharged, and he would be entitled to an immediate surrender of all the notes and sureties given by him to the bank; that he is not indebted to the bank or to the complainant by reason of any matter set forth in the bill, and that it would so appear upon an equitable accounting between them.

Walker also filed his cross-bill, setting up substantially the same matters alleged in his answer, and praying that said Bauer be declared to be a holder of the principal notes described in his bill subject to Walker's equities; that an accounting be taken between Walker and the bank, and if on such accounting it should appear that said notes are fully paid, that the same and the collaterals pledged therewith be surrendered up to Walker.

Leopold Miller, Jacob Liebenstein, Robert Loebnitz and C. Edward Schoelkopf, four of the defendants to the original bill, appeared and answered, and also filed their cross-bill, alleging the execution by Walker to the bank of various other notes secured by collaterals, a part of which had before their maturity been negotiated by the bank to said Miller & Liebenstein, and a part to said Loebnitz; also alleging the negotiation by the bank to said Schoelkopf of two of the six notes secured by pledge of the three $50,000 notes and deed of trust above mentioned; and setting up and claiming that under and by virtue of the several agreements between Walker and the bank recited in the original bill, they were entitled to an interest in the surplus moneys which might arise out of the various securities pledged by Walker to the bank: and praying for a full disclosure by the bank of the names of all parties entitled to said securities, and their respective interests, and for a foreclosure of said securities and the payment of their respective claims out of the proceeds of the sale of the property covered thereby.

Among the notes appearing by the cross-bill to have been negotiated by the bank to Miller & Liebenstein, was one for $12,000, dated July 2 1872, executed by Walker to the bank, due ninety days after date without grace, and drawing ten per cent. interest after maturity and twenty-four per cent. per annum in case of non-payment within ten days after maturity. The collaterals deposited to secure this note consisted of two notes, each for $6,000, dated October 24, 1870, executed by William Hansbrough, payable to the order of Henry H. Walker, and by him indorsed to the bank, and a deed of trust securing the same, executed by said Hansbrough to said Rogers, as trustee, conveying the east half of the northwest quarter of section 4, township 38, north of range 13, east, in Cook county.

By an amendment to the cross-bill it is alleged that these two $6,000 notes were, on the 17th day of November, 1870, pledged to secure S. J. Walker's note for $10,000, and that said note was extended to July 2, 1872, when the sum thereby evidenced was increased to $12,000, and a new note taken therefor, the same collateral being retained.

Russell M. Larned, one of the defendants to the original

bill answered the cross-bill of Leopold Miller et al. alleging that on the 12th day of January, 1871, Samuel J. Walker and wife, in consideration of $30,000, which has been fully paid, conveyed to him by a warranty deed containing full covenants of warranty, and among them covenants of seizin and against all incumbrances, the said east half of the northwest quarter of section 4, township 38, north of range 13 east, in Cook county, together with another tract of land not now in dispute said deed being duly recorded on the 26th day of January 1871; that said two notes for $6,000 each, secured by a deed of trust on said land, were mere accommodation notes, executed by Hansbrough and indorsed by Henry H. Walker for the benefit of Samuel J. Walker; that said land was really the property of Samuel J. Walker, and had been conveyed by him to Hansbrough without any consideration, for the mere purpose of enabling Hansbrough to execute a trust deed thereon, securing said notes for the benefit and accomodation of Walker ; that by a deed dated December 17, 1870, and recorded January 23, 1871, Hansbrough quit-claimed and released to Walker, all his right, title and interest therein ; that at the time of the execution of the quit-claim deed, the two $6,000 notes were taken up, paid and satisfied by Walker, and were delivered into his possession for the purpose of removing the lien of the trust deed, and of enabling Walker to convey a good title to Larned ; that the principal note held by Miller and Liebenstein was executed long subsequent to the execution and recording of the deeds from Hansbrough to Walker, and from Walker to Larned ; that Miller and Liebenstein were charged with notice of the record of said deeds, at the time they took an assignment of their note, and also that they had actual notice of said deeds, so that, as against them, the deed of trust was discharged.    Larned afterwards filed his cross-bill, praying for a decree directing Rogers, the trustee, to execute a release of the deed of trust.

Norman Williams and John L. Thompson, two of the defendants answered the original bill alleging that they were the owners of block 28 in Samuel J. Walker's subdivision of that part of the northwest quarter of section 31, etc., lying south

of the Illinois and Michigan canal; that they purchased and received a conveyance of said block, together with certain other property not now in dispute, paying a full consideration therefor, on the 22nd day of July 1871, and that their deed was recorded August 30, 1871; that at the time of their purchase-the deed of trust thereon to Hoffman, described in the original bill, had been released and discharged, and was not a lien thereon; that immediately after their purchase, they entered into possession of said premises and still hold possession thereof. These defendants also filed their cross-bill praying for a decree requiring said Hoffman to release the trust deed on said block 28.

The International Bank, by its answer, admitted the truth of the allegations of the original bill, and of the cross-bill of Leopold Miller et al., but denied the charges in Walker's cross-bill, that the accounts between Walker and the bank were incorrectly kept, or that any money had been loaned or foreborne to him by the bank at a greater rate of interest than ten per cent. per annum; and also. denied that there were any unsettled accounts between Walker and the bank. It further alleged that all its accounts with Walker had been closed and settled upon an account stated between them, and that Walker had no longer any right to go into an investigation of his accounts with the bank, as such matters had been fully settled, after a full understanding and comprehension of the same by the parties. The bank also filed its cross-bill, alleging that it was the owner of various notes executed by Walker and secured by the deposit of collaterals, and setting out and claiming the benefit of the several agreements between it and Walker, in relation to collateral securities mentioned in the original bill, and praying for a sale of the premises descr bed in the various collateral deeds of trust, and the application of the proceeds to the satisfaction of the indebtedness specifically secured, and the distribution of the surplus among the parties entitled thereto, according to their respective rights and interests.

It appears that prior to the filing of the original bill, Walker conveyed away a considerable portion of the lands covered by the various deed of trust above mentioned. Thus,

on the 1st day of October, 1877, he and his wife conveyed to Joseph E. Young, one of the defendants to the original bill, block 27 in Samuel J. Walker's subdivision of that part of the northwest quarter of section 31, etc, lying south of the Illinois and Michigan canal. Also, by several deeds executed prior to the filing of the original bill, he and his wife conveyed to Eli Kinney, another defendant, lots 21 to 36 in block 10 in S. J. Walker's dock addition to Chicago.

During the pendency of the suit, Walker having applied to the court for an order, requiring the production of the books of the bank, objection to the entry of such order was sustained, unless Walker would, by stipulation, waive the forfeiture of legal interest, so that in taking the account in the cause, interest might be charged against Walker upon the loan or forbearance of money to him by the bank, at the legal rate, notwithstanding any forfeiture thereof he might otherwise be entitled to. Walker thereupon filed the required stipulation, and an order was accordingly entered, requiring the production of its books by the bank.

On the hearing of the cause on pleadings and proofs, the court found that said Norman Williams and John L. Thompson are the owners in fee of said block 28 in Walker's subdivision, etc., and that neither Bauer, H. A. Kohn & Bros., The International Bank, or any other of the parties to the suit, have any interest therein by virtue of said trust deed thereon from Walker and wife to Hoffman; that neither Miller & Liebenstein, the bank, nor any of the other parties to the suit, have any interest in the said east half of the north west quarter of section 4, township 38, etc., under and by virtue of said trust deed thereon from Hansbrough to Rogers, as against said Larned, the owner in fee; that Samuel J. Walker is indebted to Bauer, The International Bank, Miller & Liebenstein, Loebnitz, Schoelkopf, Loewenthal, H. A. Kohn & Bros., and certain others, upon the several principal notes set out in the pleadings (except one note not now in dispute), and that said parties are entitled to the several notes and trust deeds pledged as collateral thereto (except the note secured by the trust deed on said lot 28, and the Hansbrough note and

deed of trust) ,and to have said deeds of trust foreclosed, according to the prayer of the bill and cross-bills, except as above; and that said Walker is not, nor are any of the parties hereto, entitled to any deduction or set-off as to any of said principal notes on the ground of usury.

It was thereupon ordered that, for the sole purpose of ascertaining the amount due upon the various principal notes, the cause be referred to the master to compute the amount due thereon, and in making the computation the master was directed to compute interest on the notes drawing interest from date, at the rate they bore prior to maturity, and upon notes not bearing interest from date, at six per cent. per annum; and the master was further directed not to consider the question of usurious payments of interest upon any of said notes.

The court further found that at different times during the continuance of the dealings between Walker and the bank, accounts were presented to Walker by the bank, of amounts debited and credited to him on the books of the bank, and that said accounts were retained by Walker without objection upon his part, made either to the aggregate or the various items of said account, and up to the commencement of the suit no objection had been made to the same, and it was ordered that said accounts were not to be investigated by the master as to such general items, but that Walker might be allowed to prove, if he could, that there had been certain items included fraudulently in said accounts, and that there were specific credits to which he was entitled.

On the coming in of the master's report, a final decree was entered, ordering the cancellation of the deed of trust on said lot 28, in accordance with the prayer of the cross-bill of said Williams and Thompson, and also ordering the cancellation of said Hansbrough deed of trust, in accordance with the prayer of the cross-bill of said Larned, and decreeing the foreclosure of the several deeds of trust described in the pleadings, except as aforesaid, and the sale of the several tracts of land thereby conveyed, and the application of the proceeds to the payment of the several principal notes above mentioned, in accordance with the rights of the respective parties, as found and established by the decree.

Walker brings the record to this court by writ of error and assigns for error, among other things, the finding of the court below in relation to the defense of usury, and the direction to the master not to consider usurious payments in the statement of the account; and also the refusal of the court to direct the master to take an account of all the dealings and transactions between Walker and the bank, treating the same as an open, unsettled account. The assignments of error also call in question the validity of the act of the General Assembly by which the bank claims to be incorporated.

Cross-errors are also assigned by Miller & Liebenstein, and by H. A. Kohn & Bros., the former calling in question that portion of the decree which relates to the trust deed from Hansbrough to Rogers, and the latter that portion which relates to the trust deed from Walker and wife to Hoffman. Defendant Kenney comes and expressly waives all errors in the decree.

Since the suit has been pending in this court, it having been made to appear that said Walker has been adjudicated a bankrupt, and Robert E. Jenkins appointed his assignee; said assignee has on his own motion been substituted for Walker as plaintiff in error.

WILLIAM T. BURGESS, for plaintiffs in error ; that these are money decrees, cited Eames v. German Turnverein, 74 Ill. 54; Jenkins v. Greenebaum, 95 Ill. 18.

That the rights of these parties, as between themselves, are not a matter for investigation under a bill to foreclose a mortgage: Gage v. Perry, 93 Ill. 177.

Upon a bill in chancery to foreclose a pledge of collaterals, all equities against the principal notes, to secure which the pledge was made, are open against the assignees, and no notice of them is required to be proved, in order to charge the assignee: Olds v. Cummings, 31 Ill. 188.

Messrs. ROSENTHAL & PENCE, for defendants in error; cited Walker v. Abt, 83 Ill. 226; Derrick v. Lamar Ins. Co. 74 Ill. 404; Mulvey v. Gibbons, 87 Ill. 367; Colehour v. State Sav. Ins. 90 Ill. 156.

Jenkins v. Bauer.

The assignee of a chose in action takes it subject to the equities in the original debtor, and not to those in a third person: Olds v. Cummings, 31 Ill. 188; Murray v. Lylbum, 2 Johns. Ch. 44; Mott v. Clark, 9 Pa. St. 399; Pryor v. Wood, 31 Pa. St. 142; Westfall v. Jones, 20 Barb. 10.

Miller & Liebenstein are entitled to be subrogated to the rights of Hansbrough : Curtiss .v. Taylor, 9 Paige, 432; Moses v. Murgatroyd, 1 Johns. Ch. 129; Phillips v. Thompson, 2 Johns. Ch. 418; Russell v. Clark, 7 Cranch, 69; Burdett v. Clay, 8 B. Mon. 291; Bank v. Thorp, 18 Johns. 505; Funk v. Reynolds, 33 Ill. 495.

Appellate Courts will confine themselves to errors which affect the party who assigns errors : Enos v. Capps, 12 Ill. 255 : Doulin v. Hittinger, 57 Ill 348; 1 Bark. Ch. Pr. 395.

The party complaining must show injury to himself by the record and not in consequence of the record : Black v. Kerrigan, 3 Green, 46; Dale v. Roosevelt, 8 Cow. 338; Jacqueth v. Jackson, 17 Wend. 434; 3 Bac. Abr. 1 Arch. Pr. 209; 2 Saund. 46.

The principle of constructive notice does not apply where a director deals with a corporation: Merrick v. Penn. Co. 61 Ill. 472; 6 South. Law Rev. 816.

Walker's assignee cannot make a defense which was not made by the pleadings or asserted in the court below: Kellogg v. Moore, 79 Ill. 278; Railway v. McCarthy, 96 U. S. 267; Gould v. Banks, 8 Wend. 562.

Mr. E. C. LARNED, for defendant in error, Larned; that Walker is estopped by his deed to Larned, cited Jones v. King, 25 Ill. 388; Walker v. Dement, 42 Ill. 272; Gregory v. Savage, 32 Conn. 261; Brooks v. Record, 47 Ill. 30; Stafford v. Fargo, 35 Ill. 454; Fortier v. Dorst, 31 Ill. 218.

An assignee of a mortgage takes it subject to equities between the original parties : Sumner v. Waugh, 56 Ill. 539; Bush v. Lathrop, 22 N. Y. 537; Schaffer v. Rielly, 50 N. Y. 61; Greene v. Warwick, 64 N. Y. 225; Crane v. Turner, 67 N. Y. 439; Mickles v. Townsend, 18 N. Y. 575; Davis v. Austen, 1 Ves. Jr. 247; Kleeman v. Frisbie, 63 Ill. 489;

Clute v. Robinson, 20 Johns. 611; Foly v. Smith, 6 Wall 492; Lord v. Favorith, 29 Ill. 153; White v. Sutherland, 64 Ill. 186; Copp v. Graham, 14 Ill. 198; Wright v. Tyler, 5 Gilm. 195.

BAILEY, J. Most of the questions raised by Walker's assignments of error have been decided by the Supreme Court in the cases of Jenkins, assignee, etc. v. Greenbaum et al. 95 Ill. 11, and Jenkins, assignee, etc. v. The International Bank et al. 97 Id. 580.

The case of Jenkins, assignee, etc. v. Greenbaum et al. arose out of transactions between Samuel J. Walker and Greenebaum and Foreman, of a character precisely similar to those disclosed by the present record, and the pleadings and proofs, so far as they related to the question of an accounting and to the defense of usury, were substantially the same as here. The case of Jenkins, assignee, etc. v. The International Bank et al., arose out of transactions between Walker and The International Bank, and was a suit by the bank to foreclose a large number of securities pledged by Walker as collateral to his promissory notes given to the bank for money loaned, thus constituting a part of the very dealings between Walker and the bank involved in the present suit. Those cases and this, as well as several others growing out of Walker's transactions, were litigated in the court below *pari passu*, and were heard at the same time, the case of Jenkins v. The International Bank, and the present case being heard upon the same evidence, so far as applicable.

The right of th. assignee of Walker to appear and prosecute the writ of error, about which some question has been raised here, is directly affirmed by the cases above cited.

The question as to the validity of the charter of The International Bank, raised by one of Walker's assignments of error, is decided in Jenkins v. The International Bank, and also in the case of the People v. Loewenthal et al. 93 Ill. 191, which was a direct proceeding by *quo warranto*, to test the validity of this very charter. In both of these cases it is held to be valid.

The two cases first cited conclusively establish the right of

Jenkins v. Bauer.

Walker, at least as against the International Bank, to avail himself under the pleadings in this case of the payments made by him as usurious interest, to the extent of disregarding the usurious agreements, and applying as payments upon the the principal all moneys paid as interest in excess of the rate allowed by law, so far as such payments have been made in dealings which have not been fully closed up and terminated.

The point that the question of the refusal to apply the usurious payments to the reduction of the principal, was not raised by exceptions to the master's report, and so cannot be raised here, is fully answered by the case of Jenkins v. The International Bank. In that case as in this, the order of reference expressly directed the master not to consider the question of usurious payments of interest upon any of the notes; and as the master was expressly prohibited from considering the subject of usury at all, it would have been nugatory for Walker to offer evidence on the hearing before him, bearing upon that question, or to interpose exceptions on the ground of his refusal to disobey the express mandate of the order of reference.

An attempt, however, is made to distinguish Jenkins v. The International Bank from the present case, so far as it bears upon the defense of usury, as presented by this record. In that case the interlocutory decree, by which a reference to the master was ordered, failed to show that the court had, upon any preliminary hearing, found, whether in point of fact, the allegations of usury in the pleadings were sustained by the evidence, and yet in the order of reference the master was prohibited from considering that question. On reference to the original record in the case we find that the interlocutory decree commenced with the following recital; "And now this cause having come on this day to be heard, and the Court having announced the principles governing the same," etc., after which followed the order referring the case to the master, and laying down the principles upon which the account should be stated. The Supreme Court in their opinion say: "The circuit court, as we understand this record, without determining whether such payments were made or not, evidently held the

inquiry immaterial or incompetent, under the pleadings, and
so directed the master not to consider the question." In a
supplementary opinion filed on denying a petition for a re-
hearing, they say: "We cannot sanction the position of coun-
sel that the court *found*, as a fact, that no usurious payments
were made upon the notes in controversy.   *   *   *   What we
decide is, that it was error in the circuit court to ignore all
questions relating to the allegations of payments of usurious
interest. Had the circuit court found that no usurious pay-
ments had been made, we might examine the proofs as to such
finding. In the absence of such finding, the master should
have been directed to ascertain and report the facts in that re-
gard."

It is insisted that in the present case the court found the
facts which it failed to find in Jenkins v. The International
Bank. The interlocutory decree, it is true, recites a hearing
of the cause on pleadings and proofs, and that, on such hear-
ing, divers facts appeared to the court to have been proven.
In the recital of such facts in the decree is the following
clause : "That said S. J. Walker is not, nor are any of the
parties hereto entitled to any deduction or set-off to any of
said principal notes, on the ground of usury." This is not, in
terms, a finding that Walker had, in fact, made no payments
of usurious interest, nor can we regard it, under all the circum-
stances of the case, as tantamount to such finding. Walker's
right to a deduction or set-off on the ground of usurious pay-
ments, depended, first, upon whether such payments had been
properly pleaded, and secondly, upon whether they had been
satisfactorily proved.

There was a controversy at the hearing over both these
questions, especially the first, and we are quite as well war-
ranted in the conclusion that the circuit court regarded the
question of usurious payments as immaterial and incompetent
under the pleadings, as that it found the averments on that
subject unsustained by the evidence. In the International
Bank case, where the pleadings and evidence on this subject
were precisely the same as here, the court seems to have ruled
out this defense on account of the insufficiency of the plead-

ings, and the present record fails to show that any different conclusion was reached in this case.

But even if we were to regard the recital in the interlocutory decree as tantamount to a finding that Walker had made no payments of usurious interest, we are clearly of the opinion that such finding is against the evidence.  Our examination of the record leaves our minds entirely free from doubt that, on most of the loans made to Walker by the bank during the entire course of their dealings, interest was charged by the bank and paid by Walker at a rate exceeding ten per cent. per annum.

According to the testimony of Walker, the usual rate was two per cent. per month, though sometimes, by special arrangement, it was placed as low as eighteen or twenty per cent. per annum.  His testimony is fully corroborated by that of Badger, an expert, who examined the books and papers of the bank with great care, and gave, as a witness, the results of his examination.  This evidence is substantially uncontradicted.  Loewenthal, the president of the bank, in some parts of his testimony, admits that the bank, in some instances, charged Walker more than ten per cent. per annum, but to most of the questions put to him on this subject, he professes to have no specific recollection, or, under the advice of counsel refuses to answer.

It follows, then, that the decree, so far at least as it relates to the securities held by the bank, and which the bank, by its cross-bill, is seeking to have foreclosed, is erroneous.  Those securities come directly and fully within the cases above cited, and must be governed by the principles there laid down.  The same may perhaps be said of the securities held by Loewenthal.  The evidence shows that he acted for the bank in a large proportion of its transactions with Walker and it will be presumed that he had actual notice of all of Walker's equities, at the time he obtained a transfer of said securities to himself. So far as all those securities are concerned, Walker is clearly entitled to avail himself of the defense of usury.

Of the deeds of trust held by other parties as collateral to Walker's notes, and which are sought to be foreclosed in this

suit, all were executed by Walker himself, except the following, viz: the one executed by Hausbrough, covering the property claimed by R. M. Larned, which will be particularly noticed hereafter; one for $5,334, executed by Francis A. Riddle, and held by defendant Leibenstein, and one for $6,000, executed by Henry H. Walker, and held by defendant Loebnitz. There is also a deed of trust for $12,500, executed by Henry H. Walker, and pledged to the bank by Samuel J. Walker, as collateral to two $4,000 notes, one of which has been negotiated to Miller & Liebenstein, and the other is still held by the bank.

There can be no question as to Walker's right to interpose the defense of usury to all the deeds of trust in which he was the grantor, although in the hands of assignees. The rule is well settled in this State that mortgages and deeds of trust are non-negotiable choses in action, and that when assigned the assignee takes them subject to the same infirmities or defenses to which they are subject, as between the original parties. Olds v. Cummings, 31 Ill. 188; Fortier v. Darst, Id. 212; Walker v. Dement, 42 Id. 272; White v. Sutherland, 64 Id. 181; Pettillon v. Noble, 73 Id. 567; Silverman v. Bullock, 98 Id. 11; Foster v. Strong, 5 Bradwell, 223. Under this rule the assignees hold these securities subject to the same equities and defenses which might have been urged against them by Walker, if the bank had continued to hold them. In that case, as we have seen, they would have been subject to reduction or extinguishment by an application to the principal notes of the usurious payments made by Walker, and they must be held to be subject to the same infirmity in the hands of the assignees.

But it is urged, on the authority of the recent case of Silverman v. Bullock, *supra*, that the deed of trust executed by Riddle, and the one for $6,000, executed by Henry H. Walker, are subject to a different rule. There is one respect which seems to have been overlooked by counsel, in which the circumstances of these two securities differ essentially from those under consideration in that case, and which, we think, distinguish this case from that. In Silverman v. Bullock, the securities were transferred absolutely to the assignee, but here the transfer was

only partial, the bank retaining a residuary interest, after the payment of the principal notes for which they were specifically pledged. Under the several agreements between Walker and the bank, which counsel in their arguments have termed "blanket" agreements, these deeds of trust, as well as all the others involved in the present controversy, were deposited by Walker with the bank, not only as specific collaterals securing particular notes, but also as general collaterals securing all the indebtedness of Walker to the bank. There is evidence tending to show that it was the usual practice of the bank whenever it negotiated the principal notes, to retain the collaterals in its own possession, holding than for its own benefit under the "blanket" agreement, as well as for the benefit of the assignees of the principal notes. Accordingly, the court below, in its decree, ordered the payment to the bank, to apply generally on its various claims against Walker, of the entire surplus arising out of all the various collaterals, after the payment of the principal notes, and the satisfaction of two other notes in favor of which the court found certain superior equities. It appears by the decree, that the amount due on the Riddle note and deed of trust, was $8,178.78, while the amount due on the principal note was only $5,020.69, leaving a surplus of $3,158.11. The amount due on the $6,000 note and deed of trust executed by Henry H. Walker, was $8,981,33, while the amount due on the principal note was only $1,984.68, leaving a surplus of $7,996.65. So far as this surplus was concerned, there never was any assignment of these securities by the bank. To this extent, at least, they are to be regarded as still belonging to the bank, and subject to all defenses to which they would be liable if the bank had parted with no interest in them.

The cross-errors assigned by H. A. Kohn & Bros., call in question that portion of the decree which relates to the deed of trust on block 28, in Walker's sub-division, etc. It appears that among the various collateral securities deposited by Walker with the bank, was a promissory note of Henry H. Walker for $15,000, dated June 22, 1870, payable to his own order and due one year after date, and a deed of trust securing

the same, executed by Samuel J. Walker and wife to Francis A. Hoffman, as trustee, conveying said block 28. These papers were first pledged as collateral to S. J. Walker's note for $7,500, dated June 18, 1870, due four months after date. Again, on the 18th day of January, 1871, they were pledged as collateral to another note of Walkers' of that date, for $8,100, due ninety days after date; and again, on the 22d day of November, 1872, they were pledged as collateral to two notes executed by Walker for $5,000 each, both maturing on the 17th day of February, 1873. Of these notes, one is still held by the bank, and the other as is claimed, was, on the day of its date, assigned to H. A. Kohn & Bros.

Sometime in the summer of 1871, and while the note and deed of trust were held by the bank as collateral to the $8,100 note, Williams & Thompson entered into negotiations with Walker for the purchase of said block 28, and also block 30, in the same sub-division, and such negotiations resulted in a purchase of the two blocks by Williams & Thompson, free of all incumbrances, for the sum of $30,000, and such purchase was consummated on the 22d day of July, 1871, by a conveyance of the two blocks by a deed with full covenants of warranty, executed by Walker and wife to Williams & Thompson, and the payment by Williams & Thompson of $10,000 of the purchase-money in cash, and the securing of the balance, which they have since paid.

On this branch of the case, two leading questions of fact were presented, upon which considerable testimony was taken, viz: 1, whether the two $5,000 notes represented a new and independent indebtedness, or were merely a renewal and continuation of the indebtedness represented by the $7,500 and $8,100 notes; and 2, whether the deed of trust was in fact released and discharged by Hoffman, the trustee, prior to the conveyance to Williams and Thompson.

It will be observed that the collateral notes secured by the trust deed at the date of the purchase by Williams and Thompson matured one month prior to the conveyance to them, and that the two $5,000 notes for which it is claimed that these collaterals are now held, were not executed until one year and

four months after the conveyance ; so that, if these notes represented a new and independent indebtedness, the collaterals were not pledged to secure such indebtedness until long after they became overdue, and long after the rights of Williams and Thompson had accrued.   These facts, coupled with the further fact, of which there seems to be ample proof, that the bank had actual notice of the conveyance to Williams and Thompson at the time it was made, would, of themselves, be sufficient to justify the decree that the deed of trust was not a lien on block 28 as against Williams and Thompson.

The evidence by which it is sought to identify the indebtedness secured by the two $5,000 notes with that covered by the former notes is, to our minds, entirely unsatisfactory.  No witness who has any knowledge of the fact swears to such identity, while Walker, the only witness examined who has any actual knowledge of the matter, swears that, according to his recollection, the $8,100 note was paid or otherwise secured, and the $5,000 notes given for an entirely different consideration.

The evidence principally relied upon to establish the identity claimed, is that of Loewenthal, the president of the bank, who disclaims having any actual recollection of the fact, and Badger, the expert, who has no knowledge of the transactions of the bank, except such as he has derived from its books, papers and memoranda.   Both of these witnesses testify to mere conclusions which they have formed from an examination of the books and papers in the possession of the bank.   Testimony of this character, even if it could be regarded competent for such a purpose, would be entitled to very little weight. The conclusion to be drawn from an inspection of the notes themselves is against the theories of these witnesses, and so far as the record discloses the written memoranda upon which their opinions are based, we fail to find any clear and distinct evidence on the subject one way or the other.

As to the other question, we think the evidence clearly preponderates in favor of the conclusion that, prior to the conveyance to Williams & Thompson, the deed of trust was released by Hoffman, the trustee.   It appears that during the

negotiations, Walker furnished Williams & Thompson with an abstract of the title which showed the existence of the deed of trust on block 28, and also an incumbrance on block 30. These Walker undertook to have removed, and to enable himself to do so, as he testifies, he went to Hoffman, who at that time was the president of the bank, and, as he recollects, either paid the indebtedness for which these incumbrances were held, or secured it in some other way satisfactory to Hoffman, and procured from Hoffman a release of the incumbrances and delivered it to Williams & Thompson. He further testifies that at that time he was frequently making sales of property covered by deeds of trust, and that he generally arranged the matter by the payment of the money, or the substitution of other satisfactory security.

Thompson, also, testifies that he had several conversations with Walker in relation to getting these incumbrances released, and that on one occasion he and Walker went together to the bank and stated to the person in charge their arrangement ; that a package said to contain the incumbrances was produced, and Walker then said that he would fix the matter in a day or two. After that, Walker came to the office of Williams & Thompson, and brought with him a release of the deeds of trust executed by Hoffman. This paper, whatever it was, seems to have been destroyed in the great fire of 1871, and so was not produced at the hearing. The witness is an attorney-at-law, who has had considerable experience in the examination of titles to land, and although he is unable to state with entire positiveness the contents or even the general character of the paper presented to him by Walker, he testifies positively that on examining it he found it to contain complete and satisfactory evidence of the cancellation and discharge of the incumbrances.

No witness is produced directly contradicting this evidence, and the only circumstances of any significance relied upon to rebut it are, that the release does not appear to have been placed on record, and that the deeds of trust, instead of being surrendered to Walker, were retained in the custody of the bank. The latter of these circumstances has little, if any, weight, in

view of the fact, abundantly established by the evidence, that during the entire course of the dealings between Walker and the bank, it was the usual practice of the bank to retain in its possession all of Walker's cancelled notes and securities. The mere fact that the release was not recorded, though a circumstance of some importance as bearing upon the question, cannot be held to rebut the strong affirmative evidence of its execution.

By the release, the lien which the bank held on block 28 was extinguished, and the bank could no longer hold it as security for its existing debt against Walker, or receive it under a new pledge from Walker as collateral to a further loan; nor could the assignee of the bank obtain any rights under it which would be valid as against Williams & Thompson. In our opinion, that portion of the decree relating to the deed of trust on said block 28 should be affirmed.

We will next consider the cross-errors assigned by Miller and Liebenstein. The facts relating to this branch of the case, as disclosed by the evidence, are briefly these: On the 24th day of October, 1870, Samuel J. Walker, being the equitable owner of the east half of the northwest quarter of section 4, township 38, north, of range 13, east, in Cook county, the title to said land being at the time in Henry H. Walker, caused the same to be conveyed to William Hansbrough, and on the same day said Hansbrough executed his two promissory notes for $6,000 each, payable respectively in one and two years, to the order of said Henry H. Walker, with eight per cent. interest, and to secure said notes, executed to John G. Rogers, as trustee, a deed of trust on said land. Said notes were thereupon indorsed in blank by Henry H. Walker, and delivered to Samuel J. Walker, who, on the 28th day of November, 1870, borrowed of the International Bank $10,000, giving his own note therefor, and pledging the two Hansbrough notes and deed of trust as collateral security. On the 17th day of December, 1870, Hansbrough executed a quit-claim deed, conveying said land to Samuel J. Walker, and on the 26th day of January, 1871, Walker and wife, for a valuable consideration, sold and conveyed said premises to Russell M.

Larned, by a warranty deed, covenanting, among other things, against all incumbrances. Both of these deeds were duly recorded.

The $10,000 note was negotiated by the bank to Amos S. Seeley, and on the 14th day of June, 1872, Walker paid it in full at the International Bank, where Seeley had left it for collection. Afterwards, on the 2nd day of July, 1872, Walker again borrowed of the bank the sum of $12,000, giving his note therefor, payable ninety days after date, and in the body of the note it was recited that the two $6,000 Hansbrough notes and deed of trust were deposited as collateral security. The $12,000 note was afterwards, and, as is claimed, on the day of its date, assigned to Miller & Liebenstein, who are now the holders thereof.

Considerable evidence was adduced at the hearing, tending to show that at the time of the conveyance to Larned, this deed of trust was in fact released. We have been furnished with a copy of a written opinion, filed by the learned circuit judge, who heard the cause in the court below, in which the evidence on this question is fully reviewed and discussed, and the conclusion reached that it fairly preponderates in Larned's favor. Without attempting to re-state the evidence, we content ourselves with simply saying that we are inclined to concur on this branch of the case, with the reasoning and conclusions of the learned circuit judge, and to hold that the evidence on this subject, though not altogether clear and satisfactory, is yet sufficient, when considered in the light of all the facts and circumstances surrounding the case as disclosed by the record, to raise a fair presumption, which the holders of the securities have failed to rebut, that prior to Larned's purchase, an arrangement was made between Walker and the bank for the release of these collaterals, by Walker's paying or otherwise securing the principal note of $10,000, for which they were then held, and that such arrangement was consummated before or at the time of the conveyance.

But there are other grounds which, in our opinion, are even more satisfactory, upon which the decree of the court below

dismissing, as to Larned, Miller & Liebenstein's cross-bill, for want of equity, must be sustained.    When the $10,000 note was paid, Walker, if he did not actually receive back the collateral notes and deed of trust from the bank, was entitled to their surrender, and so the case must be viewed in all respects, so far at least as Miller and Liebenstein are concerned, as though Walker hypothecated these securities for the first time on the second day of July, 1872, the date of the $12,000 principal note.    At that time one of the collateral notes was more than eight months overdue.    Miller and Liebenstein taking it, as they did, so long after its dishonor, took it not only subject to all equities with which it was encumbered in Walker's hands, but also with *notice* of all such facts as reasonable inquiries on their part would have developed.    The doctrine applicable to this subject is well stated by Shaw, C. J., in Fisher v. Leland, 4 Cush. 456, as follows: "Where a negotiable note is found in circulation after it is due, it carries suspicion on the face of it.    The question instantly arises, why it is in circulation?    Why it is not paid?    Here is something wrong.    Therefore, although it does not give the indorser notice of any specific matter of defense, such as set-off, payment, or fraudulent acquisition, yet it puts him on inquiry He takes only such title as the indorser himself has, and subject to any defense which would be made if the suit were brought by the indorser."

It is clear that in Walker's hands, neither of these notes could be enforced as against the land.    By his warranty deed covenanting against all incumbrances, he had obligated himself to have the Hansbrough deed of trust discharged, and when that security came into his hands by his payment of the $10,000 note, the lein thereby created was, as between him and his covenantee, cancelled and extinguished, and it was no longer in his power to enforce it.    Miller & Leibenstein must be held to have taken the security, so far at least as the note already overdue was concerned, burdened with the same equity.

But how stands the case as to the other note ?    By the dishonored note they were put upon inquiry as to the circumstances of that note, and the reasons why it had not been paid.

Reasonable diligence in pursuing the inquiry would have led them to apply for information, at least to Hansbrough, the maker of the collaterals, and Walker, the pledgor; and had they done so, they would, as will be presumed, have been put in possession of all the facts. They must be charged with notice of all such facts as they would have learned on reasonable inquiry. C. R. I. & P. R. R. Co. v. Kennedy, 70 Ill. 350. Being chargeable with notice for one purpose, we see no reason why they should not be chargable with it for all purposes.

It must also be remembered that, at the time of the execution of the $12,000 principal note by Walker, the deed from Walker to Larned was on record, and had been for over a year and a half, and the question arises whether the bank and Miller & Leibenstein, its assignees, were not chargable with notice of the record of said deed.

The general rule doubtless is, as the learned counsel for Miller & Leibenstein insist that the record of a subsequent conveyance is not notice to one claiming under a prior recorded deed from the same grantor, but we think the facts in the case do not warrant the application which is sought to be made of that rule. No one, we think, will contend that the assignee of a mortgage is not chargable with notice of a release executed by the mortgagee and placed on record before the assignment. That is not a case of a subsequent conveyance by the same grantor, but a conveyance made prior to the assignment by the grantee, from whom the assignee derives title.

In this case Miller & Liebenstein took their title through an assignment or pledge from Walker, and Walker, before parting with the deed of trust, executed to Larned a conveyance of all his title and interest in the land, a conveyance which, at least as between them, operated as an extinguishment and cancellation of the lien of the deed of trust. True, at the time the conveyance was made, the deed of trust was held by the bank or Seeley, but when it came back into Walker's hands on payment of the $10,000 principal note, the title with which Walker thus became re-invested, inured to the benefit of Larned by force of the covenants in the deed, and so the rights of the parties must be held to be in all respects the same as though the deed of

trust had been in Walker's hands at the time of the conveyance to Larned.

But there is another ground upon which, as it seems to us, Miller & Liebenstein may be fairly held to be chargeable with notice of the Larned deed. The Hansbrough notes and deed of trust were executed without consideration, and, consequently, so long as they remained in Walker's hands were mere accommodation paper, having no consideration or validity, and incapable of enforcement until negotiated by him. It was by their hypothecation to the bank on the 2d of July, 1872, that they received their validity and became binding as valid securities for the payment of money. That then, within the meaning of the rule above cited, must be regarded as the true date of their execution, and the bank and its assignees must be held to have had constructive notice of all deeds then on record. The case of Houfes v. Schultze, 2 Bradwell, 196, may be cited as an authority in support of this view. That was a contest between the holders of two trust deeds on the same property, executed by the same grantor. The deed of Houfes was executed and delivered February 5, 1873, but not recorded until April 8, 1873. The deed to Schultze was executed March 26, 1873, and recorded March 27, 1873, but was not delivered nor the loan evidenced thereby actually advanced until April 8, 1873. It was held, that the latter deed, though recorded first, could not be regarded as valid or operative as a security until it was delivered and the loan consummated. This case was affirmed by the Supreme Court on appeal. Schultze v. Houfes, 96 Ill. 335.

We are of the opinion, then, that the equities of the bank and its assignees must be regarded as subsequent and subject to those of Larned, and that the decree, so far as it relates to the Hansbrough deed of trust, should be affirmed.

It is insisted that the decree should also be affirmed so far as it relates to certain lands conveyed by Walker prior to the commencement of the suit, to Eli Kinney and to Joseph E. Young. These lands were covered by several deeds of trust, which by the decree were ordered to be foreclosed, and said lands sold to pay the principal notes for which those deeds of

terst were held as collateral. Kinney and Young are neither of them complaining of the decree, and Kinney has appeared and expressly waived all errors therein.

We have already held the decree, so far as it attempts to find the amount due on said deeds of trust, to be erroneous, because the court, in stating the account between Walker and his various creditors, refused to allow him to avail himself of the defense of usury. It is urged, however, that so long as these grantees of Walker's equity of redemption find no fault with the decree, neither Walker nor his assignee in bankruptcy is prejudiced by the error complained of, and therefore ought not to be heard to insist on the reversal of the decree. We are unable to adopt the view thus presented, for various reasons.

The conveyances to Young and Kinney were with covenants of warranty, and Walker, being liable to them on his covenants, is interested in having the land discharged from the lien of the deeds of trust, a result which might have been accomplished in whole or in part by an application to the principal indebtedness of the various usurious payments shown by the evidence. Again, the decree, after providing for the sale of the premises covered by the various deeds of trust, and the application of the proceeds to the satisfaction of the indebtedness, provides that the various creditors have a decree against Walker for any balance of money that may be found to be due them, respectively, after the application of the proceeds of the sales so ordered to be made, and that execution issue for the collection of such balance when ascertained. Even if this is not to be regarded as amounting in terms to a personal decree against Walker for the deficiency, it is an adjudication, in pursuance of which these creditors may, at any time after the deficiency is ascertained, apply to the court for such decree, and enforce the same against Walker personally, by execution.

It cannot be doubted, then, in view of this feature of the decree, that Walker has such interest in having the amount of the indebtedness in controversy reduced by all just credits, as authorizes him to avail himself of any error by which he has been unjustly deprived of any credit or set-off to any portion of the indebtedness. True, he has been adjudicated a

bankrupt, but there is no evidence, so far as we are aware, that he has been discharged, nor can we anticipate that he will be So far as we can see, then, his liability to a personal decree for the deficiency remains, notwithstanding the adjudication of bankruptcy.

Furthermore, under the "blanket" agreements between Walker and the bank, any surplus arising out of the sale of the lands deeded to Kinney and Young is to be applied in reduction of Walker's other indebtedness, and to that extent releasing other property from the burden of the incumbrances resting theron. Both Walker and his assignee, then, are entitled to assign for error the decision of the court by which they were deprived of the benefit of just credits upon the indebtedness secured upon the Kinney and Young lands. It follows that the errors assigned by Walker to that portion of the decree affecting those lands must be sustained.

An order will accordingly be entered affirming the decree so far as it relates to the deed of trust executed by Samuel J. Walker and wife to Francis A. Hoffman, conveying said block. 28; and to the deed of trust executed by William Hansbrough to John G. Rogers, conveying the east half of the northwest quarter of section 4, township 38, range 13, in Cook county, and reversing the residue of the decree, and remanding the cause for the statement of an account in accordance with this opinion, and other proceedings not inconsistent therewith.

Decree affirmed in part, and reversed in part.