# JASPER J. PEDDICORD *et al.*

*v.*

# CHARLES E. CONNARD.

1. USURY—*what constitutes.* If an usurious contract is made, whether express or implied, at the time of or subsequent to the entering into of the agreement, to take or reserve more than lawful interest, it is such an agreement as falls within the prohibition of our statute.

2. If, where a party overdraws his account with a bank, the bank, at the end of each sixty days, compounds the interest on the sums overdrawn, so as to make it the same as in discounting a loan, and the same is included in a note, the transaction will be tainted with usury, which may be set up in defense to a suit on the note, and no interest will be allowed on the sums overdrawn, either on the account or the note.

3. SAME—*after settlement and payment, party can not recover back.* Where a party having an account in bank, which he overdraws from time to time, makes a settlement with the bank by having his bank book written up and his checks surrendered, and he paying the charges made against him, he can not, after a considerable lapse of time, open such settlement to recover unlawful interest charged to him on the sums overdrawn.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. C. B. SMITH, Judge, presiding.

Messrs. NELSON & ROBY, and Mr. A. J. GALLAGHER, for the plaintiffs in error.

Mr. W. C. JOHNS, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that plaintiffs in error were bankers in the city of Decatur, and defendant in error was a dealer in stock and produce, which he bought and shipped to the great markets. It also appears that defendant in error, about the 1st of February, 1866, opened a deposit account with plaintiffs in error, and from time to time, as he required the use of money, checked upon them for such sums as he needed. When his deposits were exhausted, he applied to them for permission to overdraw his account, which privilege was always granted as requested.

He thus, at various times, overdrew, from a few dollars to over seventeen thousand, before making his account good. Plaintiffs in error charged interest on the sums thus overdrawn until the account was made good, and a balance was then struck, and the bank book of defendant in error was written up and handed to him, and his checks were surrendered.

Whilst it appears that there was no express agreement as to the rate of interest to be paid, defendant in error says he expected to pay ten per cent per annum on the amount overdrawn. Plaintiffs in error, on these sums, charged more than ten per cent per annum. They claim that it was done as though there had been a regular loan made, a note given, and the amount of interest deducted and retained out of the principal, and as a payment in advance. There seem to have been monthly statements of account made, but no balance was struck or defendant's bank book written up, until his account was made good and the balance against him was canceled, and a new account started. This we understand to have been the course of business.

It appears that the total amount retained for interest during the period the parties were thus engaged, was $2981.40. This includes the amount over ten per cent, as we understand the evidence. On a trial by the court without a jury, by consent of the parties, under the pleas of usury, the court deducted that sum from the note, and rendered judgment for $1886.95, the balance.

It is first urged, that although there may have been a greater rate of interest retained than is permitted by the law, still, it was not usury, unless it was agreed and so understood when the transaction occurred, and that there was no such understanding or agreement in this case. Such seems to be the ruling of the courts in Great Britain and the various States of the Union, in which the entire debt is forfeited or heavy penalties are imposed where the transaction is tainted with usury. The law does not favor forfeitures, and in such cases the courts hold to a rigid and strict compliance with the law imposing the penalty. It is, therefore, probable, that those courts would

not give so strict a construction if the only loss were, as it is with us, the interest on the debt for the money loaned or forborne. Reason does not require it, as it does where the debt and interest are lost by reason of taking or contracting for a trifle more than is sanctioned by the law. Hence we are not prepared to adopt so rigid a construction.

If an usurious contract is made, whether express or implied, at the time of or subsequent to the entering into the agreement, to take or reserve more than lawful interest, it is such an agreement as is within the purview of our statute. We would not be justified in giving such a construction to the law as to render it nugatory, or almost practically inoperative, when the penalty is so light as only to bar the collection of any interest, but it should receive a fair and reasonable interpretation, so as to suppress the evil, as intended by the General Assembly. But in the view we take of this case, this question is not vital to its decision.

The evidence shows that the overdrafts and all charges for interest from the 18th day of July, 1874, to the 6th of the following August, were paid, but from the latter date until the note was given, on the 29th of November, 1875, defendant in error was continually in arrear, and the sum thus overdrawn, and the interest computed on that amount, as before stated, with rests at every sixty days, or interest compounded, formed the consideration of the note. The replication admits that $404.09 in excess of lawful interest was charged without the knowledge or consent of defendant in error.

It appears that the excess on the money overdrawn from August, 1874, until the note was given, over six per cent was $831.92, and over ten per cent was $497.11, and this all entered into and formed a part of the note. This latter named sum was illegal, unauthorized and usurious. It was charged by plaintiffs in error, and defendant in error unmistakably agreed to pay it when he gave the note. Plaintiffs in error knew that it was not allowed by law, and they intended to and did claim its payment as usurious interest, and defendant in error agreed to pay it when he gave the note, and we can only hold

that it was an agreement to pay a greater rate of interest than is allowed by the law, and is such an agreement as is prohibited by the statute. From this evidence, plaintiffs in error had no right to recover interest on the money overdrawn after the last settlement and payment before the note was given, whether on the account or under the note.

But the question arises, whether the court erred in refusing to allow any interest on the various sums overdrawn prior to that date. Was it right to deduct the $2981.40, the interest charged on all of the transactions between the parties? We are wholly unable to concur in the proposition that all of these dealings, payments and settlements constituted but one transaction. There were a large number of statements of accounts, balances struck, and checks returned and canceled. These all have every element of a settlement between the parties. This is the usual and daily mode of making settlements. If not intended as a full settlement to the date, why render the account, or why surrender the checks and have them canceled? We must hold that when the bank book of defendant in error was written up, balanced, and his checks returned, and his indebtedness canceled, there was, at that time, a full settlement of the account, and the evidence shows that the account of defendant in error on each of such settlements was paid.

The evidence shows that when he asked and obtained permission to overdraw, he promised to pay when he made sales and received returns, and when he thus received funds he deposited them, and left his bank book to have it written up, and when the bank did so, he was charged with the money overdrawn, with the interest, and having treated it as settlement and payment after such a lapse of time, he can not be permitted to question these settlements, and to claim to recover interest, although it may be usurious, thus voluntarily paid and acquiesced in.

But it is urged that he did not know what rate of interest he had paid, until after he gave this note. If we could concede that such is the fact, it was his duty, within a reasonable time, to learn the rate he had paid, and, failing to do so, he

must be regarded as having waived all objections to these settlements. The business affairs of the country must be protected against reopening accounts for a new adjustment after such delays and long acquiescence in settlements and payments. Defendant in error says he looked over his bank book when it was written up, to see whether the entries corresponded with his deposits and checks, and in so examining his book he could not but have seen that interest was charged, and the amount, and if he did not compute it to learn the rate, he saw the amount charged, and must have been satisfied with the amount thus paid, or he would have had the computation made, and objected to its allowance.

Again, about the second of March, 1876, defendant, as he testified, had his son to make a computation, and he thereupon tendered to plaintiffs in error $3765.12 as the amount due them. This was a solemn admission that such was the amount due them. He does not say it was offered as a proposition for a compromise, but as a tender of payment of a sum admitted by the act to be due. On such an admission, nothing short of the most satisfactory proof of mistake or subsequent payment should prevent a recovery for a smaller sum than the amount tendered. We have found no such evidence in this record.

For the errors indicated, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*