EDLER *v.* CLARK *et al.*

GREENHOW *v.* EDLER *et al.*

(*Circuit Court, N. D. Illinois.* March 1, 1892.)

1. ACCOUNT STATED—IMPEACHMENT—EQUITY.
   Where a father and son make a settlement of the accounts between them, in pursuance of which the son gives his note for the balance found due from him, and such settlement is made a little more than a year after the transactions occurred, and is afterwards reaffirmed by the son, such settlement should not be set aside after the father's death in the absence of any clear showing of fraud or mistake.

2. MORTGAGE—MECHANIC'S LIEN—PRIORITIES—EXECUTION PURCHASER.
   Where land is conveyed by a deed absolute on its face, but in reality a mortgage, the mortgagee's interest in the land to the extent of his mortgage debt is superior to that of a purchaser under sales made on subsequent judgments and mechanics' liens against the mortgagor.

In Equity. Bill by Frederick Edler against George Clark, executor of James Greenhow, deceased, and Richard Greenhow, and cross bill by Richard Greenhow against Frederick Edler and George Clark, executor. The executor excepts to the master's report.

*M. B. Loomis,* for F. Edler.
*Cook & Upton,* for R. Greenhow.
*Hiram Cody,* for Clark, executor.

BLODGETT, District Judge. The original bill in this case was filed by Edler to establish title to a farm of 265 acres of land in De Kalb county, in this state, as against the heirs at law and executors of James Greenhow, deceased. The cross bill was filed by Richard Greenhow to set aside certain liens held by the executor and heirs of James Greenhow on said land, and also to have Edler declared to hold whatever title he holds in trust for Richard Greenhow, subject only to the small amount of indebtedness from Richard to Edler. The case is now before the court for final hearing on exceptions by Clark, the executor, to the master's report. The essential facts necessary to be considered in passing upon these exceptions, and as they appear from the testimony, are these: In November, 1871, Richard Greenhow, being then the owner of the farm in question, gave to his father, James Greenhow, his note for $1,000, for money the father had advanced to him, and secured the payment thereof by a mortgage on 160 acres of the farm in question. There is no controversy between the parties as to the validity of this mortgage, the note drawing interest at the rate of 10 per cent. per annum. In November, 1874, Richard Greenhow, having become deeply involved in debt, conveyed his farm and his personal property to his father, with the un-

derstanding that the father was to dispose of the personal property, and apply the proceeds, as far as they would go, in payment of Richard's debts, and advance sufficient more money to pay whatever of Richard's debts should remain unpaid from the proceeds of the personal property, and hold the farm as security for whatever indebtedness he should have against Richard. On the 9th of March, 1876, Richard and his father had an accounting as to the disbursements the father had made in the payment of Richard's debts, and struck a balance of $2,194, which included, not the principal, but the interest on the thousand-dollar note of November, 1871, up to that time, and Richard gave his note to his father for this balance of $2,194. On the 31st of August, 1876, James Greenhow died, leaving a will, in which the defendant Clark was named as executor, and he has qualified, and is acting as such. On the 5th of September, 1876,—less than a week after James Greenhow's death,—the widow of James Greenhow, Richard Greenhow, and some of his sisters, who were heirs to the father's estate, met at the house of the widow, and there they looked over the accounts between the father and Richard from the time of the settlement of the 9th of March previously up to the time of the father's death, and finally struck a balance of $1,007 as having been paid by the father, on account of Richard, after the settlement in March, for which amount Richard gave a note, which was dated back to the 25th of August previously, so that the settlement might appear to have been made during the father's lifetime. It was also agreed between Richard and his mother and sisters that the heirs should reconvey the farm to Richard, and that Richard should give a mortgage upon the farm for the entire amount of the indebtedness, which was figured up to amount at that time to the sum of $4,201. This adjustment included the thousand-dollar note of November, 1871, the note for $2,194 of March 9, 1876, and the note of August 25, 1876, which was made and agreed upon on the 5th of September, all these notes drawing interest at the rate of 10 per cent. per annum. This arrangement was substantially carried out. The heirs gave deeds to Richard, which deeds were recorded on the 26th of February, 1878. Richard gave a mortgage to Clark, executor, dated March 9, 1877, for $4,474.95, with interest at 10 per cent. per annum, payable in three years, and this mortgage was recorded April 25, 1878. Richard made default in the payment of this last note and mortgage. On the 24th of September, 1880, the complainant Edler filed the original bill in this case, asserting title by virtue of a sale made under a decree in a mechanic's lien proceeding in De Kalb county, to which neither James Greenhow nor his executor or heirs were parties, to 80 acres of the 160 acres of land, which was covered by the mortgage of Richard to his father of November, 1871, to secure the first thousand dollars; and by the supplemental bill filed October 12, 1880, Edler set up title to the entire farm under certain sheriffs' deeds made on sales on executions against Richard; also attacking the mortgage which Richard had given to Clark, executor, as having been given without consideration. The case was subsequently removed by the complainant Edler to this court,

where default was taken, and a decree entered. This default was subsequently set aside, and the defendants allowed to come in and make defense. Defendants then answered the original bill and the supplemental bill, insisting that the mortgage was a first and valid lien and denying Edler's title as against their mortgage. Richard, after having answered, filed a cross bill, setting up an arrangement between Edler and himself, by which Edler was to purchase these claims against Richard, and attempt, through them, to obtain title to the farm for Richard's benefit. He also, by his cross bill, attacked the mortgage he had given to Clark, alleged that he did not owe his father's estate the amount named in the mortgage, and asked that an accounting be had as to the amount actually due from him to his father's estate, insisting that the balances struck by the settlements of March 9 and September 5, 1876, were incorrect, and that he was entitled to much larger credits than he had received. The cross bill was duly answered, and its claims to an accounting were denied and put in issue, and replication was filed, the case referred to a master, before whom voluminous testimony was taken, and the master has made his report, to which only the executor, Clark, and the heirs of Richard Greenhow have excepted.

The master finds by his report that, as between Richard and Edler, there is $1,690.70 due Edler, on payment of which, without interest, Edler shall reconvey to Richard whatever title he (Edler) holds in the farm. That there is due from Richard to his father's estate $2,578.49, for which the mortgage of March 9, 1877, should stand as security, subject to the amount found due to Edler; and that on payment by Richard of the amount found due Edler, and the amount found due the executor, he should have a reconveyance of the farm, and a release of the mortgage. The exceptions by Clark, executor, and the heirs of Richard Greenhow go to the credits which the master has allowed to Richard on the balances struck in the settlements of March 9 and September 5, 1876. The master has found errors and omissions of items in the settlements between Richard and his father on March 9, 1876, which should be credited to Richard, and applied in reduction of the mortgage as follows:

| | |
|---|---|
| Proceeds of sale of personal property not accounted for by James Greenhow in the settlement of March 9th, | $1,195 00 |
| Borrowed from the bank, and charged to Richard by James, | 300 00 |
| Proceeds of threshing machine, | 350 00 |
| Rent of Richard's farm received by James Greenhow for 1875–76 | 580 50 |
| | $2,425 50 |

So that at the time of the settlement in March, 1876, according to the finding of the master, there was actually due Richard, without considering the thousand-dollar note of November, 1871, the sum of $231. He further finds that in the settlement of September, 1876, between Richard and his mother and sisters, the sum of $430, received for rent of the farm by his father, was overlooked, which should have been credited to Richard, and it was therefore improperly included in the

note for $1,007, and then carried into the computation by which the sum of $4,474.95 was reached, which made up the note and mortgage of March, 1877.

As I have already said, the testimony in this case is voluminous, and very much of it, as it seems to me, wholly immaterial and inconclusive upon the issues in the case. James Greenhow, the father, seems from the proof to have been a careful, methodical, and right-intentioned man. There is no evidence that he ever intended to impose upon Richard, or in any way take an unfair advantage of him; on the contrary, all the evidence is the other way. He was not a trained accountant, and seems to have been a man with very little book education, but he was evidently a man who had very correct business notions and methods. In attacking the mortgage thus solemnly made by him, which was the result of various settlements and conferences, Richard Greenhow, the complainant in the cross bill, has the burden of proof. He is bound to establish the mistakes and overcharges which he complains of by clear and convincing evidence. Settlements made between parties where each has opportunity to examine and consider the claims or accounts of the others should not be disturbed by courts, except for grave reasons, and where, in the light of the proof, the court can feel assured that it is better advised as to the state of the accounts adjusted than the parties themselves were at the time they made the adjustment. It is said by Mr. Justice WALKER, in *Peddicord* v. *Connard*, 85 Ill. 102:

"The business affairs of the country must be protected, against reopening accounts for a new adjustment after such delays and long acquiescence in settlements and payments."

And Chief Justice MARSHALL, in *Chappedelaine* v. *Dechenaux*, 4 Cranch, 309, said:

"No practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, on suggestion supported by doubtful or by only probable testimony. But if palpable errors be shown,—errors which cannot be misunderstood,—the settlement must so far be considered as made upon absolute mistake or imposition, and ought not to be obligatory on the injured party or his representatives, because such items cannot be supposed to have received his assent. The whole labor of proof lies upon the party objecting to the account, and errors which he does not plainly establish cannot be supposed to exist."

The proof shows that James Greenhow kept a book in which he set down the items of his account with Richard. At the settlements made with Richard, he made his statement of the account upon the basis of the entries in his book. Richard does not seem to have kept any book account with his father, but depended mainly upon his memory and the entries in his father's book. It is true this book is somewhat crudely kept, and that it requires considerable study to understand the methods of the deceased in keeping it, but the fact remains that, with this book before them, with all the transactions fresh in their minds, within a little more than a year after they had all occurred, Richard Greenhow and his father sat down, and, after more than a day spent in the examination of the various

items of the account, arrived at the balance, and Richard gave his father the note of March 9th for that balance of $2,194. Much weight is attempted to be attached to certain words and figures found upon these notes, but, in my estimation, they are worthy of no particular weight as evidence in the case. They do not prove any of the facts which Richard insists upon, and are not, it seems to me, of sufficient significance to justify disturbing the conclusions the parties themselves arrived at. Therefore, upon a careful review of the proofs, I am far from satisfied that the items, or any of them, which the master has found were not credited to Richard in the settlement between him and his father of March 9, 1876, and for which the master finds he should be credited, are so clearly established as to justify disturbing the balance struck at that time. In the settlement between Richard and the widow and heirs, resulting in the giving by Richard to the executor of the note and mortgage for $4,474.95, there is an indorsement upon the note for $425.75 for rent received by the executor, partially erased. This indorsement should stand, reducing the note to $4,049.20 at its date, as the amount then due thereon from Richard to his father's estate, which he still owns, with interest thereon according to the terms of the note.

The eighth exception to the master's report goes to the finding that the amount due Edler should have priority over the mortgage to Clark, executor. In this I think the master erred. The title to the farm was in James Greenhow long before either the mechanic's lien suit was brought or the judgments rendered under which Edler claims title. While the title in James Greenhow was in form an absolute deed in fee, it is at the same time admitted that it was in the nature of a mortgage for whatever indebtedness should accrue to James from Richard. At the time the sales were made on this mechanic's lien decree and the judgments, Richard's only interest in the property was this equity after the payment of whatever was due his father, and this equity is all that Edler took by his sheriff's deeds, and hence these deeds held by Edler cannot cut or be given preference over the mortgage. All the exceptions to the master's report are sustained. I think a re-reference hardly necessary to recompute the amount due on the mortgage on the basis I have indicated, but, if the parties cannot agree as to the computation, I will send the case again to the master.